UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Causey
Argued at Richmond, Virginia

JAMAL TIMOTHY WILLIAMS

v.     Record No. 0238-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
JUNE 20 ,2023

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Lynn S. Brice, Judge

Christopher T. Holinger (Richard G. Collins; Collins & Hyman,
P.L.C., on brief), for appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General; Robin M. Nagel, Assistant Attorney General, on
brief), for appellee.

Jamal Timothy Williams ("appellant") was convicted in a bench trial of possession of a

controlled substance with the intent to distribute, in violation of Code § 18.2-248, possession of

marijuana with the intent to distribute, in violation of Code § 18.2-248.1, and driving on a

suspended license, in violation of Code § 46.2-301. On appeal, he argues that the trial court erred in

denying his motion to suppress and admitting certain testimony of the Commonwealth's expert

witness. Appellant also challenges the sufficiency of the evidence to sustain his drug-related

convictions. For the reasons that follow, we find no error by the trial court and affirm appellant's

convictions.

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

I. BACKGROUND

"'In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial.' Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

On December 14, 2020, Officer E.T. Beck of the Chesterfield County Police Department saw appellant driving a car that was swerving in a manner Beck considered "consistent with . . . an impaired driver." Beck ran a check of the license plate number and found that the car's registered owner "had a suspended driver's license . . . based on DUI . . . convictions." Beck began a traffic stop.

Appellant, the sole occupant of the car, acknowledged that he was the car's registered owner and provided Beck with a photo I.D. from his employment. Using the information from appellant's I.D., Beck confirmed that appellant's driver's license had been suspended. He also determined that "by statute," appellant's car would have to be impounded.[1] Beck then began an inventory search of the car pursuant to the impoundment.

Beck followed the inventory search procedures of the Chesterfield County Police Department, which required him to utilize a "check . . . box" form to document the contents of appellant's car. One of the items Beck was specifically required to look for was "a spare tire in [the trunk]." On opening appellant's trunk, Beck smelled the odor of marijuana and saw, "in plain view," three two-gallon plastic containers that were "opaque-ish" in appearance. The

---

[1] Code § 46.2-301.1(A) provides, in pertinent part, that the motor vehicle of a person whose driver's license has been suspended for driving under the influence "shall be impounded or immobilized by the arresting law-enforcement officer at the time the person is arrested for driving after his driver's license . . . has been . . . suspended."

containers were closed and labelled with what Beck recognized as the street names for various strains of marijuana. Beck could see plastic sandwich bags inside the containers and saw "some specks of things on [the containers]" that "appear[ed] to be marijuana residue."

Near the containers, Beck also noticed a black plastic trash bag that he could "see a little bit inside of" because it was not fully closed. Inside the bag, Beck saw "[k]notted corner bags" or "knotted baggies" that he recognized as items used in the narcotics trade. He could also see, inside the knotted items, pills that appeared to be Xanax. Beck later told the trial court that he recognized the pills as Xanax based upon their "pretty specific" and "pretty unique" appearance, which differed from any other street drug Beck could recall.

Acting upon his recognition of what he "suspected to be narcotics[,] based on [his] training and experience," Beck searched appellant and then continued to search the car. Ultimately, Beck recovered thirteen knotted bags from the trash bag, each about the size of a golf ball and containing approximately 100 pills of what Beck believed to be Xanax. Subsequent testing by the Virginia Department of Forensic Science ("VDFS") confirmed the presence of the drug. VDFS received over 1,300 of the pills found in appellant's trunk; it analyzed two of the pills and certified that they contained Alprazolam, or Xanax.[2] Although VDFS did not test each of the remaining pills, its forensic scientist conducted a "[v]isual examination of the physical characteristics, including shape, color and manufacturer's markings of both the analyzed and [the] remaining [pills]," and determined that all were "consistent with a pharmaceutical preparation containing Alprazolam." The forensic scientist also noted that "[t]here was no apparent tampering of the [pills]."

_____

[2] *See Lambert v. Commonwealth*, 70 Va. App. 54, 59 (2019) (noting that Alprazolam is "commonly known as Xanax").

Elsewhere in appellant's trunk, Beck discovered a box of sandwich bags, unused red plastic bags, and a digital scale. In the center console of appellant's car, Beck found a Mason jar containing more pills similar in appearance to those he had discovered in the trunk. The jar also contained what Beck estimated to be about one-half ounce of marijuana packaged in four separate plastic bags. Subsequent testing of one of the pills by VDFS confirmed that the pill contained Alprazolam. As with the approximately 1,300 pills recovered from the trunk of appellant's car, VDFS did not analyze each of the pills found in the Mason jar; however, VDFS's forensic scientist visually examined the physical characteristics, shape, color, and manufacturer's markings of the analyzed pill and the remaining pills and determined that all were "consistent with a pharmaceutical preparation containing Alprazolam." VDFS also received and analyzed the four plastic bags and their contents and certified that they comprised 0.56 ounce of marijuana, including packaging. VDFS's certificate of analysis detailing its findings with respect to the marijuana, the pills from the trunk, and the pills from the Mason jar was admitted at trial without objection.

Detective Nicholas of the Chesterfield County Police Department testified as the Commonwealth's expert witness in the field of packaging and distribution of controlled narcotics. Nicholas opined that the quantity and packaging of the Xanax pills found in the black trash bag were inconsistent with personal use and that it was uncommon for a drug user, rather than a distributor, to have a box of sandwich bags like those found in appellant's trunk. He also stated that in his experience as a narcotics detective, he had never seen a drug prescription for over 1,000 pills. Nicholas opined that the "retail level" value of the Xanax pills found in appellant's car exceeded $10,000. He further opined that the four separate bags of marijuana in the car, when considered with the presence of a scale and baggies, were inconsistent with possession of the marijuana for personal use.

Appellant filed a motion to suppress the evidence that was recovered during the warrantless search of his car. The trial court denied the motion, holding that what had begun as an inventory search had become a lawful investigative search based upon what Beck "saw in plain view and smell."

At trial, appellant moved to strike the evidence. The court denied the motion and convicted appellant of all the charged offenses.

This appeal followed.

## II. ANALYSIS

### A. Motion to Suppress

Appellant concedes that initially, Beck was lawfully searching the trunk of his car pursuant to the police department's impound inventory policy. However, he contends that the trial court erred in denying his motion to suppress for two reasons. First, appellant argues that Beck's detection of the odor of marijuana did not provide probable cause for him to expand the scope of his warrantless search. Second, he argues that the plain view doctrine did not justify expansion of the search.

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). The appellate court reviews the "evidence presented at both the suppression hearing and the trial," "considers [that] evidence in the light most favorable to the Commonwealth," and "affords [the Commonwealth] the benefit of all inferences fairly deducible from that evidence." *Id.* at 474-75. In conducting our review, we are "bound by the trial court's 'findings of historical fact unless "plainly wrong" or without evidence to support them,'" a standard that also requires us to "'give[] due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Park v.*

*Commonwealth*, 74 Va. App. 635, 645-46 (2022) (first quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc); and then quoting *Commonwealth v. White*, 293 Va. 411, 414 (2017)). "The factual findings to which the appellate court must defer include the trial court's assessment of the credibility of the witnesses. However, the Court reviews *de novo* the overarching question of whether a search . . . violated the Fourth Amendment." *Williams*, 71 Va. App. at 475 (citation omitted).

1. The Odor of Marijuana

Appellant contends that Code § 4.1-1302(A), which took effect on July 1, 2021, more than six months after the search of his car, is procedural in nature. Accordingly, he argues that the statute applies retroactively and that it was thus unlawful for Beck to expand his search based upon his detection of the odor of marijuana.

Code § 4.1-1302(A) provides, in pertinent part, that

> [n]o law-enforcement officer . . . may lawfully stop, search, or seize any person, place, or thing and no search warrant may be issued solely on the basis of the odor of marijuana and no evidence discovered or obtained pursuant to a violation of this subsection, including evidence discovered or obtained with the person's consent, shall be admissible in any trial, hearing, or other proceeding.

"Whether a statute should be applied retroactively is . . . a question of law that an appellate court reviews *de novo*." *Street v. Commonwealth*, 75 Va. App. 298, 304 (2022). "The 'usual rule' regarding a new statute is 'that legislation is . . . prospective' only." *Id.* at 305 (alteration in original) (quoting *Martin v. Hadix*, 527 U.S. 343, 357 (1999)). "The retroactivity of statutes is disfavored." *Id.* "A statute is retroactive only if the legislature includes an express provision or other clear language indicating that it applies retroactively." *Id.* "In fact, '[e]very reasonable doubt is resolved against a retroactive operation of a statute, and words of a statute ought not to have a retrospective operation unless they are so clear, strong[,] and imperative that no other

- 6 -

meaning can be annexed to them.'" *Id.* (alterations in original) (quoting *Taylor v. Commonwealth*, 44 Va. App. 179, 185 (2004)).

This Court's decision in *Street* controls our analysis of this issue. In *Street*, the appellant presented the same argument that appellant presents on brief—that Code § 4.1-1302(A) creates an evidentiary rule and is thus purely procedural in nature and that accordingly, the statute's exclusionary remedy provisions should be applied retroactively. *Id.* at 310-11. We rejected that argument then, holding, after a thorough analysis, that "the statute unambiguously provides that it does not apply retroactively," and thus we are bound to reject that argument now. *Id.* at 311; *see also Johnson v. Commonwealth*, 75 Va. App. 475, 481 (2022) (noting that under the interpanel-accord doctrine, a "decision of a prior panel of this Court '"becomes a predicate for application of the doctrine of stare decisis" and cannot be overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court'" (quoting *Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020))).[3] It necessarily follows that the evidence Beck obtained when he searched appellant's car after smelling marijuana in it more than six months before the statute's enactment was not the result of a search in violation of Code § 4.1-1302(A), "because one cannot violate a statute or break a rule that does not exist. Because the statute was not in effect at the time of the search, no law enforcement officer could have violated it." *Montgomery v. Commonwealth*, 75 Va. App. 182, 196 (2022) (holding that the predecessor statute of Code § 4.1-1302(A) did not apply to a search conducted before the effective date of that predecessor statute). Accordingly, we reject appellant's argument that under operation of Code

_____

[3] The interpanel-accord doctrine "applies not merely to the literal holding of the case, but also to its *ratio decidendi*—the essential rationale in the case that determines the judgment." *Johnson*, 75 Va. App. at 481-82 (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73-74 (2003)). For this reason, we also must reject appellant's argument on brief that is grounded in the reasoning of the dissent in *Montgomery v. Commonwealth*, 75 Va. App. 182, 200-18 (2022).

§ 4.1-1302(A), it was unlawful for Beck to expand his search of appellant's car based upon his detection of the odor of marijuana.[4]

### 2. The Plain View Doctrine

Appellant further contends that although the pills in the black trash bag "could have been Xanax," they "were not 'immediately' noticeable as contraband" and Beck "was not in a position to immediately determine that [they] were incriminating." Accordingly, appellant argues, the plain view doctrine did not apply to justify the warrantless expansion of the scope of Beck's search.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (alteration in original) (quoting U.S. Const. amend. IV); *cf.* Va. Const. art. 1, § 10 (prohibiting "general warrants . . . to search . . . without evidence" as "grievous and oppressive"). "Warrantless searches, of course, are *per se* unreasonable, subject to a few well-defined exceptions." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (quoting *Abell v. Commonwealth*, 221 Va. 607, 612 (1980)). These exceptions are narrowly drawn and include consent, search incident to lawful arrest, exigent circumstances, and plain view. *Aponte*, 68 Va. App. at 157.

"The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view." *Daniels v. Commonwealth*, 69 Va. App. 422, 435 (2018) (quoting *Commonwealth v. Thornton*, 24 Va. App. 478, 483 (1997)). The United States

---

[4] Although all of Beck's actions may have been part of a lawful inventory search, we assume, without deciding, that some of his actions constituted a broader search for contraband. We also note that because we resolve this issue on the ground that the statute does not apply retroactively as argued by appellant, we need not address the question of whether, in fact, Beck's expansion of his inventory search was based "*solely* on . . . the odor of marijuana." Code § 4.1-1302(A) (emphasis added).

Supreme Court has held that three requirements must be met for the plain view exception to the warrant requirement to apply: "1) that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, 2) that the incriminating character of the evidence must be immediately apparent, and 3) that the officer have a lawful right of access to the object itself." *Id.* (quoting *Cauls v. Commonwealth*, 55 Va. App. 90, 99 (2009)). Accordingly, if an officer "lack[s] probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.*, 'if its incriminating character [is not] immediately apparent,' . . . the plain-view doctrine cannot justify its seizure." *Id.* (second and third alterations in original) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).

Here, appellant does not argue that the first and third requirements of the plain view warrant exception were not satisfied—*i.e.*, he does not contend that Beck violated the Fourth Amendment in arriving at a place from which the pills in the trash bag could be plainly viewed, or that Beck lacked a lawful right of access to the pills. Indeed, he acknowledges on brief that Beck "was lawfully searching the trunk pursuant to his department's inventory policy" when the pills came to his attention. Rather, appellant contends that the exception's second requirement was not satisfied, arguing that the pills' incriminating nature as contraband was not immediately apparent to Beck. We disagree. Beck testified that the pills he saw in plain view were grouped inside multiple "[k]notted corner bags" or "knotted baggies" that he recognized as items used in the narcotics trade. He also stated that he could recognize the pills as comprising Xanax based upon the fact that they exhibited the "pretty specific" and "pretty unique" appearance of Xanax pills, which differed from the appearance of any other street drug Beck could recall. The pills were also present in quantity—each of the multiple knotted bags or baggies was the size of a golf ball. Based on these facts and circumstances, we conclude that the second requirement of the

plain view warrant exception was satisfied because the incriminating character of the pills as contraband narcotics was immediately apparent to Beck.

### 3. Probable Cause for the Expanded Search

Ultimately, the gravamen of appellant's argument that the trial court erred in denying his motion to suppress is that the motion should have been granted because Beck lacked probable cause to expand his inventory search. Probable cause to support a search exists "when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Curley v. Commonwealth*, 295 Va. 616, 622 (2018) (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)). To determine whether an officer "had probable cause to conduct a warrantless search of a vehicle, as occurred here, 'we examine the events leading up to the [search], and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *Id.* (alteration in original) (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). "It follows that in undertaking this review we must consider what the 'totality of the facts and circumstances' would have 'reasonably meant to a trained police officer.' This includes, of course, an officer's 'common-sense conclusions about human behavior.'" *Id.* at 622-23 (some citations omitted) (first quoting *Jones v. Commonwealth*, 279 Va. 52, 59 (2010); and then quoting *Wesby*, 138 S. Ct. at 588). Based on the totality of the facts and circumstances of this case, we conclude that there was ample probable cause for Beck to move from an inventory search to a broader investigatory search.

Here, when Beck opened appellant's trunk during a lawful inventory search, he smelled the odor of marijuana. This Court has previously "embrace[d] th[e] so-called 'plain smell' doctrine," accepting the "nearly incontestable proposition" that "[u]nder the Fourth Amendment, 'probable cause may be supported by the detection of distinctive odors, as well as by sight.'" *Bunch v. Commonwealth*, 51 Va. App. 491, 496 (2008) (quoting *United States v. Haynie*, 637

- 10 -

F.2d 227, 234 (4th Cir. 1980)). Accordingly, the distinctive odor Beck smelled emanating from appellant's trunk was a basis for probable cause to believe that the car contained marijuana. *See id.* But there was more than mere "plain smell" to provide Beck with probable cause to expand his inventory search into a broader search for contraband narcotics. In addition to the smell of marijuana, Beck recognized that the plastic containers in the trunk were labelled with the street names of different strains of marijuana, and he noted the presence of what appeared to be marijuana residue on the containers. These indicia of illicit narcotics activity were in plain view when Beck lawfully opened appellant's trunk to check for a spare tire. Also in plain view were the multiple "[k]notted corner bags" or "knotted baggies" which Beck recognized as items used in the narcotics trade, along with their contents, which comprised large numbers of pills which Beck recognized as having the specific and unique appearance of Xanax pills. Viewing these facts and circumstances in their totality, it is clear that upon opening appellant's trunk during a lawful inventory search, a trained police officer applying common sense would have reasonably believed he had found contraband narcotics. Thus, Beck had probable cause to search for contraband.[5]

### B. Admission of Expert Testimony

Appellant also argues that the trial court erred in admitting portions of Nicholas's expert testimony regarding the possession of Xanax with the intent to distribute. He correctly notes that

---

[5] Appellant also argues that the trial court erred in denying his motion to suppress because the search of his car was not justified under the community caretaker exception to the warrant requirement. *See, e.g.*, *Knight v. Commonwealth*, 71 Va. App. 771, 783-84 (2020) (discussing the community caretaker exception). Given our holding that Beck had probable cause to search appellant's car for contraband based on items that were in plain view and plain smell during his lawful inventory search, we need not address this additional argument by appellant. *See Walker v. Commonwealth*, 74 Va. App. 475, 506 n.19 (2022) (noting that "'[t]he doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available'" and thus declining to address an issue "[b]ecause doing so is not necessary to . . . resolution of the appeal" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

- 11 -

to be admissible, such expert opinion testimony must be based upon facts personally known to or observed by the testifying expert or upon facts in evidence. *See* Va. R. Evid. 2:703(b). Appellant also notes that VDFS only tested three of the more than 1,300 similar pills recovered from his car and only certified that those three specific pills contained Alprazolam, or Xanax. Accordingly, he contends that Nicholas's opinion testimony regarding possession for personal use and the street value of the Xanax was "based on the total number of pills rather than the number of pills tested" and shown to contain the drug, and therefore was not "based upon facts in evidence."[6] Thus, appellant argues, the testimony should have been excluded.

"In criminal cases, the opinion of an expert is generally admissible if it is based upon facts personally known or observed by the expert, or based upon facts in evidence." Va. R. Evid. 2:703(b). "'The admission of expert testimony is committed to the sound discretion of the trial judge,' and the appellate court will not reverse that court's decision unless it 'has abused its discretion.'" *McDaniel v. Commonwealth*, 73 Va. App. 299, 308 (2021) (quoting *Brown v. Corbin*, 244 Va. 528, 531 (1992)). We will find such an abuse of discretion only when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019). "On appellate review of issues involving the admissibility of evidence, the Court views the evidence in the light most favorable to the Commonwealth as the party who prevailed below." *Haas v. Commonwealth*, 71 Va. App. 1, 5 n.1 (2019), *aff'd in part and vacated in part*, 299 Va. 465 (2021).

---

[6] On brief, appellant states that he has been "unable to locate reported opinions in Virginia concerning when [V]DFS tests only a portion of a suspected controlled substance," and argues that "[i]t appears that this issue is one of first impression in Virginia." However, this Court has previously addressed issues surrounding the partial testing by VDFS of a larger quantity of outwardly identical putative contraband. *See Williams v. Commonwealth*, 52 Va. App. 194 (2008) (addressing, in the context of a sufficiency challenge, the testing of only one of ten visually identical tablets), *aff'd*, 278 Va. 190 (2009); *Burrell v. Commonwealth*, 58 Va. App. 417 (2011) (same, regarding the testing of small amounts of larger quantities of white powder).

Here, Nicholas's expert opinion testimony was based upon facts in evidence contained within the certificate of analysis that was admitted without objection at trial. VDFS analyzed two pills from the more than 1,300 similar pills recovered from inside the black plastic trash bag found in appellant's trunk. It also analyzed one of the pills recovered from the Mason jar found in the center console of appellant's car. VDFS determined and certified that all three analyzed pills contained Alprazolam, or Xanax. It also certified that the unanalyzed pills had been visually examined and compared with the analyzed ones and that based upon their common physical characteristics, including their shape, color, and manufacturer's markings, all were "consistent with a pharmaceutical preparation containing Alprazolam." Additionally, VDFS noted that "[t]here was no apparent tampering of the [pills]." Based upon these facts in evidence from the certificate of analysis, together with the additional factual and circumstantial evidence introduced at trial, Nicholas could provide expert opinion testimony about a large quantity of Xanax, the likelihood of its possession for personal use, and its potential street value. Such opinion evidence, grounded as it was in the facts and evidence presented at trial, did not violate the rules governing such testimony. Accordingly, we find no abuse of discretion by the trial court in admitting the testimony at issue.

## C. Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to prove that he knowingly and intentionally possessed the Xanax and marijuana and that he did so with the intent to distribute them.

"In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the 'light most favorable' to the Commonwealth." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)). "Under the governing standard, 'we review factfinding with the highest degree of

- 13 -

appellate deference.'" *Commonwealth v. Barney*, ___ Va. ___, ___ (Mar. 16, 2023) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)). Accordingly, "[i]n conducting [its] review, the Court defers to the trial court's findings of fact unless they are plainly wrong or without evidence to support them." *Brewer v. Commonwealth*, 71 Va. App. 585, 591 (2020). "This deference is owed to both the trial court's assessment of the credibility of the witnesses and the inferences to be drawn 'from basic facts to ultimate facts.'" *Eberhardt v. Commonwealth*, 74 Va. App. 23, 31 (2021) (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015)). Our deferential standard of review also "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Barney*, ___ Va. at ___ (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)). Additionally, in conducting our analysis of the sufficiency of the evidence to support appellant's convictions, we are mindful that circumstantial evidence "is as competent and is entitled to as much weight as direct evidence," and "[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Williams*, 71 Va. App. at 484-85 (second alteration in original) (first quoting *Breeden v. Commonwealth*, 43 Va. App. 169, 177 (2004); and then quoting *Moseley*, 293 Va. at 463). Ultimately, "[i]f there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). "In the end, the appellate court 'ask[s] whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Eberhardt*, 74 Va. App. at 31 (alteration in original) (quoting *Davis*, 65 Va. App. at 500).

## 1. Possession of Xanax and Marijuana

Appellant argues that the evidence was insufficient to prove that he was aware of the presence of Xanax in his car, noting that although Xanax pills were found within his vehicle, he "did not make any statements establishing that he knew they were present." He also contends that the Commonwealth failed to prove that he was aware of the nature and character of the pills, because "[t]here was no evidence that [he] had sufficient knowledge to identify the pills without laboratory analysis even if he knew they were present." With respect to the marijuana, appellant argues that "[o]ther than [his] proximity [to it], there was no evidence that [he] possessed [the] marijuana" found in his car's console.

"Possession of a controlled substance may be actual or constructive." *Watts v. Commonwealth*, 57 Va. App. 217, 232 (2010). "Constructive possession of drugs can be shown by 'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" *Bagley v. Commonwealth*, 73 Va. App. 1, 27 (2021) (alteration in original) (quoting *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006)). "[P]roximity to a controlled substance is a factor that may be considered in determining whether an accused possessed drugs," although "it is insufficient alone to establish possession." *Coward v. Commonwealth*, 48 Va. App. 653, 657 (2006). "Moreover, 'ownership or occupancy of [a vehicle in which drugs are] found' is a factor that 'may be considered in deciding whether an accused possessed the drug[s].'" *Bagley*, 73 Va. App. at 27 (alterations in original) (quoting *Wilson*, 272 Va. at 27). "Possession of a vehicle does not create a presumption of 'knowing possession' of drugs found inside it." *Id.* (quoting *Brown v. Commonwealth*, 15 Va. App. 1, 9 (1992) (en banc)). However, "the finder of fact may infer from the value of [the] drugs . . . that it is unlikely . . . a transient would leave [them] in a place not under his dominion and control." *Id.*

(alterations in original) (quoting *Brown*, 15 Va. App. at 9). "Ultimately, 'the issue [of what constitutes constructive possession] is largely a factual one' left to the trier of fact, not the appellate court." *Id.* at 28 (alteration in original) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)).

Here, both Xanax and marijuana were found immediately proximate to appellant, in the center console of the car he was driving when stopped by police. Appellant was also the registered owner of the car and its sole occupant. In appellant's trunk, police discovered three plastic containers that were labelled with the street names for different varieties of marijuana. They also discovered more than 1,300 additional Xanax pills, the street value of which, according to the testimony of the Commonwealth's expert witness, was in excess of $10,000. From the totality of these facts and circumstances, a reasonable trier of fact could have concluded that appellant was aware of the presence and character of the Xanax and marijuana found in his car. From these same facts and circumstances, a reasonable trier of fact also could have concluded that both Xanax and marijuana were subject to appellant's dominion and control. Accordingly, the trial court did not err in finding that appellant was in possession of both drugs.

### 2. Intent to Distribute Xanax and Marijuana

Appellant argues that the evidence was insufficient to prove his intent to distribute Xanax because there was no direct evidence of such intent, and the circumstantial evidence did not exclude that the drug was for his personal use. He further contends that the evidence was insufficient to prove that he intended to distribute marijuana because both the quantity of the drug and the presence of a scale and baggies were not inconsistent with personal use.

"Absent a direct admission by [a] defendant, intent to distribute must necessarily be proved by circumstantial evidence," *Williams v. Commonwealth*, 278 Va. 190, 194 (2009), and "[t]here is no distinction in the law between the weight or value to be given to either direct or

circumstantial evidence," *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005). Thus, "the factfinder 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Barney*, ___ Va. at ___ (quoting *Moseley*, 293 Va. at 464). "Accordingly, the fact-finder may consider such factors as the quantity of the drugs seized and the presence of equipment or other items related to drug distribution." *Burrell v. Commonwealth*, 58 Va. App. 417, 434 (2011). "An expert witness may use these factors to express an opinion on whether a defendant's possession of drugs was inconsistent with personal use." *Id.* Additionally, possession of "disparate drugs[] [is] a factor leading to the conclusion that [an appellant] was engaging in . . . drug distribution." *Williams*, 278 Va. at 194.

Here, with respect to both the Xanax and the marijuana, Nicholas opined that the circumstances supported that the drugs' possession was inconsistent with appellant's personal use. In the trunk of appellant's car were over 1,300 Xanax pills, and Nicholas had never seen a drug prescription for more than 1,000 pills. Likewise, the packaging of the pills and the marijuana suggested possession for distribution rather than personal use. The pills were contained in thirteen separate "[k]notted corner bags" or "knotted baggies" that each held about 100 pills, and the marijuana was divided into four separate plastic bags. In addition, the police found loose plastic bags and a box of sandwich bags in the trunk that could be used to repackage either the pills or marijuana. The police found a set of scales that could be used for weighing marijuana before distribution. Finally, the police found three plastic containers in the trunk that were labelled with the street names of marijuana varieties. Considering the evidence in its totality, including the presence of multiple illicit drugs, a reasonable fact-finder could conclude that appellant intended to distribute the Xanax and marijuana found in his car.

With respect to appellant's argument that the evidence failed to exclude his hypothesis that the drugs were solely for his personal use, "[t]he Commonwealth . . . 'need only exclude

reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.'" *Young v. Commonwealth*, 70 Va. App. 646, 653 (2019) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)). "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Rams v. Commonwealth*, 70 Va. App. 12, 28 (2019) (alteration in original) (quoting *Moseley*, 293 Va. at 464). Accordingly, "[m]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with innocence has not been excluded." *Ray v. Commonwealth*, 74 Va. App. 291, 308 (2022) (alterations in original) (quoting *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)). "The fact finder 'determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant.'" *Young*, 70 Va. App. at 654 (alteration in original) (quoting *Moseley*, 293 Va. at 464). "Consequently, whether the evidence excludes all reasonable hypotheses of innocence is a 'question of fact,' and like any other factual finding, it is subject to 'revers[al] on appeal only if plainly wrong.'" *Id.* (alteration in original) (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016)). Ultimately, "the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). Based upon the same facts and circumstances discussed above, a reasonable fact-finder could conclude that appellant's personal use hypothesis is unreasonable. Accordingly, we find no error by the trial court in rejecting appellant's hypothesis of personal use.

For all the reasons stated above, the trial court was not plainly wrong in finding the evidence sufficient to prove appellant's possession of the Xanax and marijuana found in his car.

Likewise, the court was not plainly wrong in finding the evidence sufficient to prove that appellant intended to distribute both those drugs. Consequently, we find no error in the trial court's conclusion that appellant possessed both Xanax and marijuana with the intent to distribute them.

## III. CONCLUSION

For the foregoing reasons, we find that the trial court did not err in denying appellant's motion to suppress, admitting Nicholas's expert testimony, and finding the evidence sufficient to prove appellant's guilt of the drug offenses beyond a reasonable doubt. Accordingly, we affirm the trial court's judgment.

*Affirmed.*