COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and O'Brien
Argued at Norfolk, Virginia


CLAUDE DAVIS

                                                   OPINION BY
v.        Record No. 0693-14-1        JUDGE RANDOLPH A. BEALES
                                                 NOVEMBER 24, 2015
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Theodore J. Markow, Judge Designate[1]

Charles E. Haden for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Claude Davis (appellant) was convicted after a jury trial of one count of burglary with

intent to commit larceny under Code § 18.2-91, one count of grand larceny under Code

§ 18.2-95, one count of attempted arson under Code §§ 18.2-77 and 18.2-26, and one count of

violation of a protective order under Code § 16.1-253.2.  Appellant argues on appeal that the

circuit court erred in denying appellant's motion to have a Franks hearing; in admitting testimony

from the Commonwealth's rebuttal witness, Michael Rice; and in finding that the evidence was

sufficient to convict appellant of the above offenses.[2]  For the reasons below, we affirm the circuit

court.

---

[1] Judge Markow heard the motion for a Franks hearing and presided over the jury trial.
Judge H. Vincent Conway, Jr. presided over the December 7, 2012 motions hearing.

[2] Appellant also alleged that the circuit court erred in denying appellant's motion to
suppress statements he made to the police and erred in not dismissing charges against appellant
on speedy trial grounds, but this Court did not grant review on these assignments of error.

## I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth as we must since it was the prevailing party" in the trial court. Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).

So viewed, the evidence established that Stephanie Tam-Davis (Tam-Davis) – the victim in this matter – married appellant on August 8, 2008. They lived together in her house at 1420 24th Street in Newport News, Virginia. Appellant was aware of the working security system in the house. The system was located in the closet in Tam-Davis's bedroom, and monitored by ADT Security Services. The couple eventually separated. On April 26, 2011, Tam-Davis was awarded a protective order against appellant. The protective order also awarded Tam-Davis possession of the 1420 24th Street residence, and barred appellant from the property. Appellant was ordered to have no further contact with Tam-Davis or her two children. Tam-Davis subsequently changed all of the locks on her home with the exception of the lock on the storage shed, which was attached to the home. Tam-Davis also changed the code to the alarm at the house.

### May 21, 2011 Incident

On May 21, 2011, Tam-Davis received a phone call from ADT Security Services, notifying her that the alarm in her home had been triggered (she and her children had been out all day). Tam-Davis went home immediately, arrived "between 6:20 and 6:30," and when she went inside, "noticed there was a light or something coming from the kitchen and as I got closer, I heard a ticking sound." She soon realized that the light was a lit candle sitting directly next to the stove, and the ticking sound was the sound of the stove before the pilot light ignited. She observed that one burner had been taken apart, and its knob had been turned on. She had left the

- 2 -

stove intact and off that morning. The now-lit candle by the stove had been in her bedroom on the dresser near her jewelry box when she left that morning. While in the kitchen, Tam-Davis heard her daughter scream "Mommy"! When she ran to her daughter's bedroom, she saw a big hole in the bedroom wall, leading into the storage shed. The hole was in the location of an old window that had been plastered over and boarded up. Tam-Davis then noticed that some of her jewelry had been stolen from her own bedroom. When she left the house that morning, her jewelry box was "closed up." However, when she returned that evening, "[i]t was kind of ajar" and some of its contents were missing.

Joshua Bennett (Bennett), an installation manager at ADT Security Services, testified that on May 21, 2011, the alarm system at Tam-Davis's house sent multiple "siren supervisory trouble" signals to ADT Security. Bennett described siren supervisory trouble as a signal the security system at the house sends ADT Security Services when the system has lost contact with the siren. The siren normally can be triggered to make a loud noise when the system has an alarm event. However, ADT received the first signal indicating that the siren had been disconnected from the system on May 21 at 6:20 p.m. Disconnecting the siren would have caused the alarm to go off without sound. At 6:23 p.m., ADT Security received another signal from Tam-Davis's house, this time indicating that the interior motion detector detected movement. Bennett testified that once an ADT alarm system goes into "alarm" – as it did here when the siren was disconnected – the system looks for movement in the house. At 6:26:02 p.m., six minutes after ADT received notice that the alarm was disconnected, ADT received a signal indicating that a door had been tripped.

Officer Charles Griffith (Officer Griffith), a police officer from the Newport News Police Department, arrived at Tam-Davis's house at 6:52 p.m. Upon being led into the house, Officer Griffith immediately detected a strong odor of gas that became stronger as he moved to the

- 3 -

kitchen. Officer Griffith observed a lit candle sitting on the counter next to the gas stove in the kitchen, which he blew out. Tam-Davis also testified that she thought she may have been the one to blow the candle out. Either way, there is no testimony to suggest that the candle was not lit at the time Tam-Davis arrived at her home. One of the burners had been taken off of the stove. Officer Griffith noticed that the storage shed was unlocked and testified that the words "you're next" had been scratched into the side. Officer Griffith observed that all doors and windows were secured on the exterior of the house and that the only sign of forced entry was the hole from the storage shed into the bedroom. Captain John Marr, Jr. (Captain Marr), the Deputy Fire Marshal for Newport News, testified, "[The lit candle and turned on gas] was set up to be an explosive device. The gas was cut on to free-flow, a flame-producing device, meaning the candle had been lit and placed in-between the area next to the gas, right-front burner." Captain Marr said that free-flowing natural gas like that was a very flammable accelerant.

On May 23, 2011 – just two days after the incident – appellant went to Mr. EZ Pawn in Chesapeake to pawn four ladies' rings. Leigh Perry (Perry), the General Manager of EZ Pawn, took and retained a picture of appellant for the store records. At trial, Perry identified appellant as the man in the picture. Tam-Davis gave a description of each of the four stolen rings later recovered from the pawnshop, and testified to their value, which totaled more than $200 in the aggregate.

On June 9, 2011, appellant was arrested and a search of the safe in his hotel room revealed three of appellant's identification cards, a pawn ticket from Mr. EZ Pawn, jewelry, a camera, and a cell phone. Some of the jewelry recovered from the safe was the same jewelry that had gone missing from the victim's jewelry box.

Troy Fields (Fields), the only defense witness, testified that he met appellant around February of 2011 at work. They both worked at Metro Machine. Fields testified that on May 21,

- 4 -

2011, they had decided to go play pool after work and that it was the only time he had "hung out together" with appellant. He recalled that he was sure it was a Friday and that he had worked with appellant earlier that same day. Fields testified that he arrived at Long Shots bar sometime between 5:45 p.m. and 6:15 p.m. to find appellant already there. He said they did not leave until 11:00 p.m. or 11:30 p.m.

Michael Rice (Rice), the CFO of a staffing agency for shipyard workers, staffed workers with Metro Machine in 2011. As part of his staffing duties, Rice handled payroll for his employees. Rice would take work logs that Metro Machine sent to him, and then pay each worker based on his or her work logged. Rice testified that he had an independent recollection of appellant. After looking at a work log from Metro Machine, Rice also recalled that he did not pay appellant for working on May 21, 2011 and that May 21, 2011 was a Saturday. On cross-examination, Rice confirmed that the only reason he remembered not paying appellant was because he used the work log to refresh his memory. Appellant's counsel made a motion to strike Rice's testimony, and argued that Rice testified that the only reason he remembered not paying appellant for May 21 was that he looked at the work log record, which should not be admitted because Rice was not the custodian of the record and it was not authenticated. However, the Commonwealth did not attempt to admit the record at this stage. The circuit court overruled appellant's objection and said, "I think that goes to credibility but not admissibility of his testimony." The circuit court did not admit the work log as evidence at trial.

### Motion to Suppress

On December 7, 2012, the circuit court held a hearing on appellant's statutory double jeopardy motion, appellant's motion to suppress evidence obtained as a result of an invalid search warrant, and appellant's motion to suppress his statement that was obtained after he invoked his right to counsel. Pertinent to this appeal, appellant's first trial counsel questioned

Detective Senter about an affidavit Detective Senter swore out on July 9, 2011 in front of a magistrate to obtain the search warrant for appellant's hotel room. Appellant's counsel questioned Detective Senter about his decision to reference in the affidavit appellant's previous arson charge stemming from an incident that happened in Illinois in 2001. Appellant had been charged, but was not convicted. Detective Senter testified that he knew the charge had been dismissed, but that he never informed the magistrate. Detective Senter said he mentioned the facts in the police report from the Illinois incident to add to the grounds for probable cause.

In addition to the alleged arson in Illinois, the affidavit first lists facts about another incident involving arson that took place at Tam-Davis's house on June 5, 2011. Detective Senter wrote that police determined that a bottle apparently full of gasoline had been thrown into the children's bedroom through a window. Both children in the bedroom were burned. Tam-Davis reported that she suspected appellant, her estranged husband, of committing the arson because she said that he had a history of stalking behavior and of threatening violence towards her. Tam-Davis already had a protective order against appellant at the time of these events in 2011. In the affidavit, Detective Senter next referenced the incident at Tam-Davis's house on May 21, 2011, noting that police found a hole in the dry wall, smelled an extremely strong odor of natural gas in the house, and observed a "broken burner" and a lit candle next to it. Detective Senter mentioned that appellant had pawned jewelry only two days after the break-in that Tam-Davis confirmed had been taken from her house during the break-in. Detective Senter noted that appellant had used his Illinois driver's license to identify himself at the pawnshop and that there were pictures and video of appellant as he pawned the jewelry.

The circuit court found, "I think it's relevant if you're looking for someone for arson to know that they have been charged in 49 other states with arson. I don't have to tell you which

- 6 -

ones are nol prossed, which ones are unfounded.  I think it's a relevant fact if they're charged on probable cause."  The circuit court then denied the suppression motion.

## Motion for *Franks* Hearing

On February 24, 2014, appellant's new trial counsel filed a motion for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), on the ground that Detective Senter wrote in great detail regarding a charged incident in Illinois, but that he never "inform[ed] the magistrate that the Illinois charge was dismissed;" that it was written in reckless disregard for the truth; and that the affidavit, without this information, would have been deficient.  On March 13, 2014, the court conducted a hearing.  At that hearing, the Commonwealth argued that the motion to have a Franks hearing should be denied because any material a Franks hearing addresses was already considered by the circuit court in its December 7, 2012 hearing.  Appellant's counsel stated, "I don't deny the issue was addressed.  I concede as much."  Later, appellant's counsel said, "As I've always said, the issues were addressed in front of Judge Conway.  I'm asking the Court to do it the way that the United States Supreme Court has said it should be."  Appellant did not present any new evidence at this stage.  The circuit court overruled appellant's motion for a Franks hearing on the ground that the issue had already been considered in the previous hearing on the motion to suppress.

## II. ANALYSIS

### A. *Franks* Hearing

#### *Standard of Review*

"We review *de novo* the trial court's application of the law to the particular facts of the case."  Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012) (citing Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008)).

*General Principles*

The Fourth Amendment entitles a defendant to a hearing designed to challenge a facially valid search warrant only under limited circumstances. Franks, 438 U.S. at 171-72. If a defendant wishes to challenge a search warrant, the defendant first must make a motion requesting a new evidentiary Franks hearing, in which the defendant must make a "substantial preliminary showing" that a false statement was knowingly and intentionally included in the warrant affidavit or included with reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. Id. at 171. In order to make such a showing, first, a defendant should point out the deficiency with specificity, include a statement of supporting reasons, and prepare affidavits or sworn (or otherwise reliable) statements of witnesses. Id. If there is a "substantial preliminary showing," the circuit court must then determine whether the allegedly false statement is necessary to the finding of probable cause. If both requirements are met, a court must hold a Franks hearing. Id. at 172.

Franks *Hearing Encompassed in the December 7, 2012 Hearing*[3]

Appellant's counsel repeatedly acknowledged that evidence of the alleged police misconduct that he would ask the court to consider in a Franks hearing was already considered by the circuit court at its December 7, 2012 hearing. However, appellant assigns error to the circuit court's denial of "Davis's request for a hearing on his motion to suppress evidence derived from a search warrant obtained in contravention of the principles set forth in Franks v. Delaware." (Citation omitted). His only argument in support is that "the procedure for a Franks hearing was distinctly different from a suppression hearing." To bolster his contention that following the procedure for a Franks hearing should have dictated a different result in the circuit court, appellant

---

[3] The Commonwealth asserts for the first time on appeal that appellant was not entitled to a Franks hearing at all. This Court need not decide that question because, regardless of whether it was necessary, a hearing already took place.

argued that the circuit court heard multiple pretrial matters in the December 7, 2012 hearing. This argument is without merit. The proper focus should be on whether the circuit court made a final ruling on the merits of the Franks issue – not on whether the court also heard counsel's additional motions in that hearing as well.

In this case, the circuit court ruled on the Franks issue when it found that Detective Senter's reference to the facts of the alleged arson in Illinois was relevant to probable cause. Appellant's counsel conceded that the Franks issue was addressed at the hearing on the motion to suppress, stating to the trial judge, "As I've always said, the issues were addressed in front of Judge Conway. I'm asking the Court to do it the way that the United States Supreme Court has said it should be." Because the circuit court reached the merits of the Franks hearing at the December 7, 2012 hearing, the circuit court did not err in denying appellant's subsequent motion for a Franks hearing. See Barnes v. Commonwealth, 279 Va. 22, 24, 688 S.E.2d 210, 211 (2010) ("In spite of the improper procedure that the circuit court employed, we nonetheless agree with the circuit court's conclusion that the affidavit for the search warrant in this appeal established probable cause.").[4]

### B. Rice's Admissible Testimony

"It is well settled that '[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Wood v. Commonwealth, 57 Va. App. 286, 304, 701 S.E.2d 810, 818 (2010) (quoting James v. Commonwealth, 18 Va. App. 746, 753, 446 S.E.2d 900, 904 (1994)).

Appellant contends that Michael Rice's testimony was inadmissible hearsay, and not a business record subject to exception from the rule against admitting hearsay. We disagree and

---

[4] Appellant actually assigns no error to the trial court's denial of the motion to suppress the evidence obtained as a result of the search warrant. See Rule 5A:12.

find that Rice's testimony was admissible. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). Rice, the declarant, testified that he did not pay appellant on May 21, 2011, which is an action about which Rice had independent, personal knowledge. It simply was not hearsay. Appellant objected to the work log as being inadmissible hearsay, but it was never admitted into evidence. Rice testified that he relied on the work log to refresh his memory, but he also testified that he had an independent recollection of appellant – and of not paying him.

These facts are directly analogous to the situation in Bell v. Commonwealth, 49 Va. App. 570, 643 S.E.2d 497 (2007), where it was not reversible error for the witness to refresh his recollection with the inadmissible certificate of analysis. Id. at 577, 643 S.E.2d at 501.

Rice had handled payroll accounts for Metro Machine and paid appellant as an employee of Metro Machine. However, he did not pay appellant on May 21, 2011. Assuming without deciding that the work log was inadmissible because it was not properly authenticated as a business record, Rice could still permissibly refresh his recollection with the work log. Consequently, we hold that the circuit court did not abuse its discretion in allowing Rice to testify that he did not pay appellant on May 21, 2011 after he referred to the work log to refresh his recollection.

C. Sufficient Evidence Against Appellant

*Standard of Review*

Appellant also challenges the sufficiency of the evidence on all four convictions. When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v.

- 10 -

Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)) (emphasis in original). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

*Attempted Arson*

Appellant contends that the Commonwealth failed to prove beyond a reasonable doubt that appellant committed a direct but ineffectual act in furtherance of arson and failed to show appellant's intent to commit arson in violation of Code §§ 18.2-77 and 18.2-26. A direct but ineffectual act does not have to be the last proximate act before completion, but it must be more than "mere preparation" and be an act geared "to produce the intended result." Fortune v. Commonwealth, 14 Va. App. 225, 229, 416 S.E.2d 25, 28 (1992) (quoting Tharrington v. Commonwealth, 2 Va. App. 491, 494, 346 S.E.2d 337, 339 (1986)).

> Although it is impossible to adopt a bright-line rule for distinguishing acts of mere preparation from acts that constitute an attempt, "it may be said that preparation consists [of] . . . arranging the means or measures necessary for the commission of the offense and that the attempt is the direct movement toward the commission after the preparations are made."

Parsons v. Commonwealth, 32 Va. App. 576, 582-83, 529 S.E.2d 810, 813 (2000) (quoting Siquina v. Commonwealth, 28 Va. App. 694, 701, 508 S.E.2d 350, 353 (1998)).

Appellant had disputes with Tam-Davis around May 21, 2011. Appellant was familiar with the house and the alarm system, having lived there while married to Tam-Davis. The only point of entry to the house was from inside the storage shed – something that would not be visible to neighbors or passers-by. Only days after the break-in, appellant pawned some of the jewelry that the victim reported as stolen from her home. A rational trier of fact certainly could have concluded that appellant was the individual who broke into the home.

Appellant, once in the house, disabled the sound on the alarm. He dismantled the gas stove to allow natural gas to flow directly into the kitchen. He turned the stove on, then retrieved a candle from Tam-Davis's bedroom, and placed the candle directly beside the stove. Appellant lit the candle, which Captain Marr testified was set up to be "an explosive device" together with the altered stove. Captain Marr further explained that an explosion would occur when the gas hit that flame because the gas was a very flammable accelerant. Appellant clearly did all of this to start a fire in Tam-Davis's kitchen. In short, the facts indicate that appellant deliberately acted in order to create an explosion and start a fire. Therefore, we conclude that a rational trier of fact certainly could have found that appellant committed a direct but ineffectual act in furtherance of setting Tam-Davis's house on fire.

This same evidence is also sufficient to prove beyond a reasonable doubt appellant's intent to commit arson. In order to prove intent, the Commonwealth must show that appellant maliciously intended to start the fire. It is well settled that:

> Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury. Its existence is a question of fact to be determined by a jury under proper instructions.

Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). Carving the words "you're next" onto the storage shed, retrieving a candle, altering the stove to allow natural gas to

flow freely into the room, placing a candle directly next to the stove, and then lighting the candle show a series of deliberate acts to cause an explosion and fire resulting from appellant's animosity toward his estranged wife, Tam-Davis.

*Sufficiency of the Remaining Three Convictions*

Next, appellant contends that the Commonwealth failed to prove beyond a reasonable doubt that appellant violated a protective order, committed grand larceny, or committed a breaking and entering with intent to commit larceny. Specifically, appellant asserts that the Commonwealth only showed suspicious circumstances, and failed to provide DNA evidence, eyewitness testimony, or a confession from appellant himself. Needless to say, the Commonwealth is not required to put on DNA evidence, eyewitness testimony, or obtain a defendant's confession in order to prove its case here beyond a reasonable doubt. The only requirement for the Commonwealth is that it put on enough circumstantial evidence such that a reasonable jury could have rejected a defendant's claim of innocence. Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003). "Circumstantial evidence is not viewed in isolation. 'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'" Id. at 514, 578 S.E.2d at 786 (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)).

*Breaking and Entering with Intent to Commit Larceny*

In order to prove breaking and entering with intent to commit larceny in violation of Code § 18.2-91, the Commonwealth must prove that appellant entered a dwelling house at night without breaking, or during the day with breaking; that appellant concealed himself in the house or adjoining outhouse; and that appellant had the intent to commit a larceny. "Unexplained or falsely explained possession of goods recently stolen in a burglary, coupled with other

inculpatory circumstances, will sustain a conviction of burglary where the sufficiency of the evidence is challenged." Schaum v. Commonwealth, 215 Va. 498, 501, 211 S.E.2d 73, 75-76 (1975) (citing Christian v. Commonwealth, 210 Va. 117, 168 S.E.2d 112 (1969)).

Appellant gained entry into the home through force, namely by making a hole in the wall once he entered the storage shed. Notably, this is the only place in the house where the locks were not changed, and where appellant could gain access without risking being seen while trying to gain entry. The access point to the house from the storage shed is something that would have been known to appellant, but not to almost anyone else. Appellant was found in possession of goods recently taken from the house when he went to the pawnshop to sell Tam-Davis's jewelry two days after the burglary. Appellant's theory that Tam-Davis had already given him this jewelry was contradicted by her testimony, and her testimony was supported by Officer Griffith. Therefore, the evidence supports the jury's conclusion that appellant was guilty of breaking and entering with the intent to commit larceny.

*Grand Larceny of the Jewelry*

In order to be convicted of grand larceny in violation of Code § 18.2-95, the Commonwealth had to prove that appellant unlawfully and feloniously took the victim's goods against her will, that those goods did not belong to appellant, and that the goods taken were valued at over $200. "[T]he unexplained possession of recently stolen goods permits an inference of larceny by the possessor." Bright v. Commonwealth, 4 Va. App. 248, 251, 356 S.E.2d 443, 444 (1987).

As noted supra, appellant had Tam-Davis's stolen jewelry in his possession when he went to the pawnshop only two days after they were taken from the victim's home. Appellant provided no evidence to rebut Tam-Davis's testimony that four rings were taken from her home on May 21, 2011 – and Officer Griffith's corroborating testimony that Tam-Davis's jewelry box

looked rummaged through. Appellant could not rebut the fact that he was found in possession of the four rings only two days after the break-in. Tam-Davis testified that the value of all of these pieces exceeded $200. She also testified that she had not given appellant permission to take any of these items. We conclude that a rational trier of fact could have found the evidence sufficient to convict appellant of grand larceny.

## *Violation of the Protective Order*

In order for the Commonwealth to prove that appellant violated Code § 16.1-253.2, it had to prove the victim had a valid protective order against appellant, that a provision of the protective order barred appellant from the premises, and that appellant came to the house. The protective order barring appellant from the premises was admitted into evidence. On May 23, 2011, appellant pawned four rings taken from the jewelry box in Tam-Davis's bedroom, the obvious inference being appellant obtained the rings by entering the house. Based on our analysis, we conclude that there was sufficient evidence for a rational trier of fact to find that appellant was present in Tam-Davis's house on May 21, 2011. A rational trier of fact, therefore, could also have concluded that appellant was guilty beyond a reasonable doubt of violating the protective order because appellant was barred from the house.

## III. CONCLUSION

In summary, appellant received a Franks hearing during the circuit court's earlier December 7, 2012 hearing. Furthermore, Michael Rice's testimony was admissible, and the evidence at trial was sufficient to support a conviction on each charge on which appellant was convicted. Accordingly, we affirm appellant's convictions for burglary with intent to commit larceny under Code § 18.2-91, grand larceny under Code § 18.2-95, attempted arson under Code §§ 18.2-77 and 18.2-26, and violation of a protective order under Code § 16.1-253.2.

Affirmed.