COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges O'Brien and Lorish
Argued at Lexington, Virginia


JAMES NORMAN MASSEY

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0915-22-3              CHIEF JUDGE MARLA GRAFF DECKER
                                                         SEPTEMBER 5, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PATRICK COUNTY
Marcus A. Brinks, Judge

Jennifer T. Stanton, Senior Appellate Attorney (Indigent Defense
Commission, on briefs), for appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, James Norman Massey was convicted of assault and battery on a

family member and two counts of assault and battery on a law enforcement officer in violation of

Code §§ 18.2-57 and -57.2.  On appeal, he challenges the sufficiency of the evidence supporting

those convictions.[1]  For the following reasons, we affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The appellant was also convicted of obstruction of justice and fleeing from law
enforcement, but he did not appeal those convictions.

In August 2019, the appellant's adult son, Thomas Massey, lived next door to the appellant in a trailer that the appellant owned. On August 20, 2019, after Thomas and his girlfriend left the residence, the appellant called the police and reported that Thomas had stolen some of his tools. He also advised the police that he wanted Thomas banned from the property. The appellant explained to the dispatcher that he planned to remove his son's possessions from the home.

While the appellant was removing Thomas' property from the trailer, the couple returned. Thomas confronted the appellant, and they engaged in a "tug of war" over a firewood rack, yelling at each other as they fought.

Harley Griffith, who lived next door, witnessed the altercation. After noticing that Thomas's forearm was bleeding, Griffith called the police.

Deputies Robert Martin and Noah Wolfe with the Patrick County Sheriff's Department, as well as Trooper Joey Hylton of the Virginia Department of State Police, arrived at the scene of the assault.[3] They were all in uniform and displaying their badges. When they arrived, it was apparent the appellant was "very upset and angry," and Thomas's "wrist area" was bleeding. Deputy Martin interviewed the appellant, Thomas, Thomas's girlfriend, and Griffith. Based on his on-scene investigation, he intended to arrest the appellant.

Deputies Martin and Wolfe approached the appellant outside his residence and told him that he was under arrest. When Deputy Martin put his hand on the appellant's wrist, the appellant pulled

---

[2] On appeal, this Court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party below. *Blankenship v. Commonwealth*, 71 Va. App. 608, 615 (2020). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn" from that evidence. *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

[3] At the time of trial, Deputy Wolfe was serving with the Henry County Sheriff's Office.

away and ran into his home. He tripped over a fan in the living room and fell to the floor. The deputies followed him inside. Deputy Martin went to the appellant's left side, and Deputy Wolfe went to the appellant's right side. They attempted to handcuff him as he lay on his back. The appellant, who was "kicking and screaming," ignored the deputies' commands to "stop resisting" and began hitting them with his open hands. He struck Deputy Martin "several times" and shoved him in the upper chest with enough force to "push [him] back." The appellant also struck Deputy Wolfe in the "lower jaw" so hard that Wolfe had to "step back for a second and shake it off." Ultimately, the deputies handcuffed the appellant and took him into custody.

At trial, the deputies testified about the encounter. Deputy Martin confirmed that he spoke with Thomas at the scene. Thomas told him that "[the appellant] had [thrown] a rock which struck him" and "that [Griffith] had witnessed everything." Martin noticed that Thomas's hand was "bandaged." Thomas said that the injury was "[f]rom the rock" that "his father threw at him." Wolfe also recalled that Thomas said the appellant hit him with the rock. Wolfe also testified that Thomas showed him the injury.

In addition, Griffith testified about witnessing the appellant's altercation with Thomas, including when he saw the appellant pick up a rock and throw it at Thomas. According to Griffith, the rock struck Thomas a few inches above his wrist. Griffith explained that Thomas then approached Griffith and asked him to call the police.

The appellant testified in his own defense. He admitted that he picked up a rock during the altercation with Thomas, but he denied that he threw it at his son. He admitted, however, that Thomas's hand was bleeding after their fight. The appellant also denied that he struck either deputy when they were attempting to arrest him. He stated that he was incapable of hitting the deputies because Deputy Martin was "on [his] midsection," holding one of his arms, while Deputy Wolfe

- 3 -

held his other arm.[4]  The appellant asserted that, to the extent that the officers' accounts differed from his, they were lying.  The victim, Thomas, also testified for the appellant.  Thomas denied that the appellant struck him with a rock.  He stated that the only injury he sustained that day was from a protruding porch nail that scratched his hand.

At the conclusion of the evidence, the appellant moved to strike the charges, asserting that Griffith's testimony was not credible.  The appellant stressed that he and Thomas denied that he had injured Thomas.  He argued further that "he did not believe that he was trying to assault the officers" and that, at most, he may have attempted to push one of them "off of him."  The trial court denied the motion, ruling that the credibility of the witnesses was a factual issue for the jury.

The jury found the appellant guilty of the charged offenses.  Consistent with the recommendation of the jury, the court sentenced him to six years and twelve months of incarceration, with five years and six months suspended.[5]

ANALYSIS

The appellant challenges the sufficiency of the evidence supporting his convictions for assault and battery of a family member and two counts of assault and battery on a law enforcement officer.  He specifically denies that he threw a rock and struck his son and argues that the testimony provided by Commonwealth's witness Griffith was "inherently incredible."  Additionally, the appellant argues that the evidence was insufficient to prove that he had the requisite intent to assault the two deputies who were called to the scene and arrested him.

---

[4] Although the deputies acknowledged that the appellant may have felt "pressure" on his body "momentarily" while they were attempting to handcuff him, both denied that Deputy Martin was "just sitting on top of [the appellant] while [he] struggle[ed]."

[5] Additionally, the appellant received twelve-month sentences for the obstruction of justice and fleeing from law enforcement convictions.  Those sentences were suspended.

It is well established that when considering the sufficiency of the evidence, an appellate court views the evidence "in the light most favorable to the Commonwealth, the prevailing party at trial." *Barnett v. Commonwealth*, 73 Va. App. 111, 115 (2021) (quoting *Smith v. Commonwealth*, 66 Va. App. 382, 384 (2016)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. *Commonwealth v. Barney*, ___ Va. ___, ___ (Mar. 16, 2023) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2022) (per curiam)).

On appeal, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original)). "It has long been deemed 'an abuse of the appellate powers to set aside a verdict and judgment[] because an appellate court, from the evidence as written down, would not have concurred in the verdict.'" *Barney*, ___ Va. at ___ (quoting *Perkins*, 295 Va. at 327). Accordingly, "the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Washington*, 75 Va. App. at 615 (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)). "In applying this standard of review, we eschew the divide-and-conquer approach, which examines each incriminating fact in isolation, finds it singularly insufficient, and then concludes that the sum of these facts can never be sufficient. Instead, in an appellate sufficiency review, the evidence is 'considered as a whole.'" *Barney*, ___ Va. at ___ (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

With respect to the assault and battery conviction involving his son, the appellant argues the physical altercation that occurred was simply a tug of war between them over some items. He contends that the only evidence that he threw a rock at Thomas was the testimony of his neighbor

Griffith. In turn, he suggests that Griffith's testimony was inherently incredible because it was uncorroborated and impeached through Griffith's extensive history of felony convictions. He also maintains that Griffith was biased, noting that he and Griffith were on such bad terms that Griffith had secured "trespass notices" against him and Thomas. The appellant further suggests that Griffith was ninety feet away when he witnessed the fight, "casting doubt on the accuracy of his observations." Finally, he emphasizes that Thomas denied that his father hit him, corroborating his own testimony. In short, the appellant's entire focus is Griffith's credibility as it relates to his own evidence.

The law regarding witness credibility is well established. Determining the credibility of witnesses "is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). In this case, the jury was the fact finder. The jury's conclusions regarding "issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the specific witness's] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)). As a matter of law, testimony is incredible only if it is "'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Further, despite the appellant's suggestion, our case law makes clear that testimony from a convicted felon is not, per se, inherently incredible. *See e.g.*, *Allard v. Commonwealth*, 24 Va. App. 57, 62-63 (1997); *Yates v. Commonwealth*, 4 Va. App. 140, 144 (1987). A witness's felony record is simply a factor for the jury's consideration to be "appropriately weighed as part of the entire issue

of witness credibility." *See Juniper*, 271 Va. at 415. And, as it relates to the appellant's reliance on his own testimony, the law is very clear. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Brown v. Commonwealth*, 75 Va. App. 388, 414 (2022) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). Finally, this Court defers to the jury's findings on the credibility of the witnesses and the inferences to be drawn "from basic facts to ultimate facts" unless no rational trier of fact could have made such findings. *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Here, the jury was entitled to reject the appellant's self-serving denial that he struck his son with a rock and, instead, conclude that he was lying to conceal his guilt. *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011). The jury was also entitled to reject the testimony of the appellant's son, which was in direct conflict with all of the Commonwealth's evidence as well as his earlier statements to law enforcement. *See Carosi v. Commonwealth*, 280 Va. 545, 554-55 (2010) ("A jury is not required to accept the self-serving testimony of the defendant or of witnesses with a potential bias in favor of the defendant, but may rely on such testimony in whole, in part, or reject it completely.").

While the appellant characterizes Griffith's testimony regarding the events as uncorroborated, parts of the appellant's own testimony, as well as the testimony provided by Deputies Martin and Wolfe, corroborated aspects of Griffith's account.[6]

---

[6] In any event, the jury is entitled to accept a witness's uncorroborated testimony if believed and provided that the testimony in question is not inherently incredible as a matter of law. *See Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010); *see also Commonwealth v. McNeal*, 282 Va. 16, 21-22 (2011) (holding that, where the court was confronted with two different factual accounts of a dispute, the trier of fact was "entitled to consider all the evidence and to resolve the conflict in evidence"); *Robinson v. Commonwealth*, 186 Va. 992, 994 (1947)

The appellant himself admitted that he was angry with his son before their altercation and that he had called the police to have him banned from the trailer. When Thomas returned, the appellant was removing Thomas's possessions from the residence. An argument between the two began and ultimately resulted in a physical confrontation. The appellant admitted that he picked up a rock during the fight and that Thomas's hand was bleeding after the confrontation, corroborating Griffith's account. Griffith's recollection of the events was further supported by the investigating deputies. While neither Martin nor Wolfe witnessed the assault, both testified that when they arrived, they saw that Thomas had a bandage around his wrist area, and Deputy Martin noted that Thomas had "tearing of the skin with some blood." The appellant was still "very upset and angry." Significantly, both deputies testified that during their investigation of the incident, Thomas admitted that the appellant had struck him with a rock, injuring him, and Martin related that Griffith had witnessed the incident.

Based on these circumstances and the significant corroborating evidence produced by the Commonwealth, it was entirely reasonable for the jury to find that Griffith's account was credible and that the appellant struck his son with a rock during a fight as the appellant was evicting him from the trailer. *See Dalton*, 64 Va. App. at 525-26. Consequently, the evidence was sufficient to convict the appellant of domestic assault and battery for striking Thomas with a rock.

Regarding the appellant's two convictions for assault and battery of a law enforcement officer, the appellant claims that the evidence proved that "any physical contact . . . with [the officers] was accidental." He argues that the deputies' testimony, which in part characterized the appellant's movements as "flailing" during the struggle, created a reasonable inference that any contact with the officers was unintentional. We disagree with the appellant's characterization of

(noting that "a conviction [of malicious wounding] could legally rest upon [the victim's] uncorroborated testimony").

- 8 -

the evidence and his reliance on a single portion of it. Instead, we hold that when viewed as a whole, and in the light most favorable to the Commonwealth, the evidence entirely supports the convictions.

"Assault and battery are common law crimes." *Montague v. Commonwealth*, 278 Va. 532, 541 (2009). "[B]ecause the elements of assault are not statutorily defined, [courts] must apply the common law definition." *Clark v. Commonwealth*, 279 Va. 636, 641 (2010). "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010) (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). A willful act is one that is "[v]oluntary and intentional, but not necessarily malicious." *Willful*, *Black's Law Dictionary* (11th ed. 2019).

"Intent is a factual determination" that can be proven by circumstantial evidence. *Towler v. Commonwealth*, 59 Va. App. 284, 297 (2011); *see Abdo v. Commonwealth*, 64 Va. App. 468, 475-76 (2015); *see also Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (noting that courts reviewing the sufficiency of the evidence do "not distinguish between direct and circumstantial evidence"). In fact, circumstantial evidence is often the only method of proof available to establish intent or knowledge. *Abdo*, 64 Va. App. at 475-76. "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion [of guilt].'" *Rams v. Commonwealth*, 70 Va. App. 12, 37 (2019) (alteration in original) (quoting *Stamper*, 220 Va. at 273).

A fact finder may infer unlawful intent in an assault and battery case if the touching, however slight, was "done in a rude, insolent, or angry manner." *Kelley v. Commonwealth*, 69 Va. App. 617, 628 (2019) (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 469 (2000)).

"Whether an act is done in . . . '[such a] manner' is a finding of fact . . . ." *Id.* at 628 (quoting *Parish*, 56 Va. App. at 332).

The appellant focuses on the deputies' use of the word "flailing" during their testimony at trial to support his argument that he did not intend to strike either of them. However, his reliance on this one word is misplaced as it ignores the broader context of the deputies' full descriptions of the events. Here, the jury heard the testimony from the deputies, as well as the appellant's account. As the fact finder, it was in the best position to consider all of the evidence in reaching its conclusion that the appellant intended to assault and batter the deputies when they attempted to arrest him. *See Davis*, 65 Va. App. at 500.

The evidence established that the appellant pulled away from Deputies Martin and Wolfe during their initial attempt to arrest him. He ran into his home, fell down, and was quickly flanked on both his sides by the deputies who attempted to subdue him and handcuff him. The deputies' testimony established that instead of complying with them, the appellant continued to resist arrest and during the fray struck both Deputy Martin and Deputy Wolfe multiple times. The deputies testified that the appellant's strikes were forceful and that he struck them repeatedly, ignoring their commands to stop. Deputy Wolfe noted that one of the blows that connected with his jaw was hard enough that he had to "step back for a second and shake it off." Deputy Martin recalled that the appellant "struck" him "several times" and that one hit "to [his] upper chest area . . . was forceful enough" to "push [him] back[ward]."

The appellant testified in his defense, and his argument regarding his lack of intent to harm the deputies was squarely before the trier of fact. He maintained that to the extent his testimony differed from the deputies, they were lying. The jury acted within its purview as fact finder in rejecting the appellant's self-serving testimony that he did not intentionally strike the deputies. *See Flanagan*, 58 Va. App. at 702. The jury was properly entitled to believe the

deputies' account. Based on the testimony at trial regarding the appellant's behavior before and during the deputies' attempts to handcuff him, there was sufficient evidence to support the jury's conclusion that the appellant intended to strike the deputies to prevent them from taking him into custody. *See Gilbert v. Commonwealth*, 45 Va. App. 67, 70-72 (2005) (holding that the defendant's obstreperous behavior before and during the offensive contact established the requisite intent for assault and battery for spitting on a law enforcement officer).

CONCLUSION

The evidence, viewed in the light most favorable to the Commonwealth, supports the jury's findings that the appellant struck his son with a rock and that his actions in striking and pushing the deputies were intentional and constituted assault and battery of a law enforcement officer. Consequently, we affirm the convictions.

*Affirmed.*