UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Malveaux and Callins
Argued by videoconference


DANIEL COURSEY

                                                    MEMORANDUM OPINION[*] BY
v.         Record No. 0482-24-2                     JUDGE MARY BENNETT MALVEAUX
                                                    APRIL 22, 2025

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF LANCASTER COUNTY
                                R. Michael McKenney, Judge

           James Joseph Ilijevich for appellant.

           Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
           Attorney General, on brief), for appellee.


        Daniel Coursey ("appellant") was convicted in a bench trial of aggravated malicious

wounding, in violation of Code § 18.2-51.2.[1]  On appeal, he challenges the sufficiency of the

evidence to sustain his conviction.  Appellant also contends the trial court erred by denying him

the opportunity to cross-examine the complaining witness "on a matter of moral turpitude."

Finding no error, we affirm the trial court's judgment.

                                      I.  BACKGROUND

        "On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,'

the prevailing party below."  *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)).  This principle "requires us to

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Appellant also was convicted of abduction, in violation of Code § 18.2-47, two counts
of assault and battery, in violation of Code § 18.2-57, and destruction of property, in violation of
Code § 18.2-137.  Those convictions are not at issue in this appeal.  *See Coursey v.
Commonwealth*, No. 0482-24-2 (Va. Ct. App. Jan. 28, 2025) (order).

'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

In September 2018, appellant and J.S.[2] were dating. On September 25, appellant punched J.S. in the face while they were at a gas station. J.S. testified that later that day, at their apartment, appellant was "very upset" and told her she had "better leave while [she could] before he hurt [her]." J.S. left the apartment and went before a magistrate, who granted her an emergency protective order and issued a warrant for appellant's arrest for assault and battery. Appellant, who had told J.S. that he would kill her if he "ever [went] to jail because of [her]," learned of the warrant and absconded to Delaware.

By October 18, 2018, appellant had returned to Virginia and he and J.S. were discussing "getting back together." That afternoon, appellant used J.S.'s car to drive her to work. When J.S. was ready to go home that evening, she called appellant, who was "very angry" and "very upset" and "scream[ed]" at her. Appellant told J.S. to meet him at a convenience store. Accompanied by a co-worker, J.S. walked to the store to retrieve her car.

As J.S. and her co-worker approached the store, appellant emerged from some bushes and "confronted" them. He was "very, very angry," called J.S. obscene names, and threatened to "fuck . . . up" J.S.'s co-worker when he attempted to intervene. Appellant refused J.S.'s repeated requests to return her car keys and told her, "you're not getting [them]. You're coming with me." He also told her that she "needed to get into the car or he was going to kill [her]." Afraid of what would happen if she did not comply, J.S. got into the car.

Appellant, who assumed the driver's seat, continued yelling at J.S., accused her of sleeping with his cousin, and punched her in the face. As he drove away from the store, he told J.S. he was

---

[2] We use the victim's initials, rather than her name, to protect her privacy.

going to drive the car off a bridge and again punched her in the face. When appellant slowed the car to turn onto another road, J.S. removed her seat belt and attempted to open her door so she could jump out of the car. Appellant grabbed J.S. by her shirt, told her, "you ain't going anywhere," and punched her again.

Appellant "sped the car up really fast" and told J.S., "if he couldn't have [her], that nobody else could." He also told J.S., "I'm gonna crash this bitch." Appellant then "jerk[ed] the wheel to the left" and thereby "turned . . . into a tree." J.S. could see the road in front of the car when appellant took this action, and testified that there was nothing in the road. She did not feel appellant decelerate before he turned the car. The car hit a tree, and J.S. lost consciousness. When she awoke, she tasted blood in her mouth and had to "pull[] [her] head out of the windshield."

A sheriff's deputy arrived at the crash scene and found appellant and J.S. standing in the road. He testified that appellant repeatedly told J.S., "I'm sorry, I'm sorry, and [J.S.], please don't do this." A second deputy who was at the crash scene testified that J.S. was shouting, "[h]e tried to kill me, he tried to fuckin['] kill me." Appellant "kept telling [J.S.], don't tell them anything, [J.S.], please don't tell them anything. They will send me back to prison." The same deputy also stated that there were no skid marks at the crash scene.

J.S. was airlifted to a hospital for treatment. At trial eight months later, she stated that she had a "big scar and numbness to [her] left knee," as well as a scar on her scalp.

During cross-examination, counsel for appellant asked J.S. if she had "previously ha[d] [her] nursing license suspended for stealing some --," at which point the Commonwealth's attorney objected on grounds of relevance. Acknowledging that counsel for appellant could question J.S. about criminal convictions and "crimes involving moral turpitude," the Commonwealth's attorney asserted that "other behavior, . . . he can't ask about." The trial court, noting that "[t]his is what we use[d] to call other bad acts [evidence]," asked appellant's counsel for a response. Appellant's

counsel replied that "we are asking about a crime which [J.S.] has committed." The trial court stated that if a crime was at issue, counsel could "ask about . . . if [J.S.] was charged with or convicted of a crime. There is a way to ask that question." Counsel for appellant then asked J.S. if she had been charged with a crime for stealing another person's prescription, and J.S. replied that she had "never been charged with a crime."

At the conclusion of the Commonwealth's case-in-chief, appellant moved to strike on grounds of lack of venue. The trial court denied the motion. Appellant presented no evidence, and in closing argument contended that "there's no evidence of [appellant's] statements or actions which could indicate any malice" to support a conviction for aggravated malicious wounding. He also argued that J.S.'s injuries did not rise to the level of "permanent and significant physical impairments."

The trial court convicted appellant of aggravated malicious wounding. It specifically found, based on J.S.'s testimony and other evidence, including photographs of the crash scene, that "the word accident . . . is not the right description. . . . [T]here is no indication that [the crash] was by accident," and in fact, "the automobile crash was intentional." With respect to malice, the trial court noted appellant's anger and threatening statements toward J.S. and that "[t]o crash an automobile into a stationary object is clearly a cruel act against the passenger of the vehicle."

This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant argues the trial court erred in convicting him of aggravated malicious wounding because the evidence was insufficient to prove that he acted with malice. Specifically, he contends the trial court failed to consider circumstances that did not support the Commonwealth's theory of an intentional crash, including that the crash occurred late at night when appellant was "clearly

emotional," "not concentrating on his driving or on the roads," and "operating the [car] at a high rate of speed." These factors, appellant maintains, "could have contributed to an accidental loss of control of the vehicle which would not qualify as a distinct act carried out with malice."

"In reviewing the sufficiency of the evidence on appeal, this Court will affirm the decision unless the judgment was plainly wrong or the conviction lacked evidence to support it." *Drexel v. Commonwealth*, 80 Va. App. 720, 747 (2024). "The reviewing court 'does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."'" *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (quoting *Davis v. Commonwealth*, 65 Va. App. 485, 500 (2015)). "It asks instead 'whether "*any* rational trier of fact could have found the essential elements of the crime"' under the applicable standard." *Id.* (quoting *Davis*, 65 Va. App. at 500).

In a sufficiency case, it is "the function of the trier of fact to determine 'the credibility of the witnesses and the weight afforded' the testimony of those witnesses." *Drexel*, 80 Va. App. at 748 (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 253 (2016)). Additionally, in a sufficiency challenge, "'we review factfinding with the highest degree of appellate deference.' This deference is owed not only to the [fact-finder]'s assessment of the credibility of the witnesses but also to the inferences to be drawn 'from basic facts to ultimate facts.'" *Williams v. Commonwealth*, 82 Va. App. 639, 653 (2024) (citation omitted) (first quoting *Commonwealth v. Barney*, 302 Va. 84, 96 (2023); and then quoting *Davis*, 65 Va. App. at 500). "Finally, evaluating the sufficiency of the evidence 'does not distinguish between direct and circumstantial evidence, as the fact finder . . . "is entitled to consider all of the evidence, without distinction, in reaching its determination."'" *Drexel*, 80 Va. App. at 748 (alteration in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)).

Code § 18.2-51.2(A) provides, in pertinent part, that it is unlawful for any person to "maliciously . . . cause[] bodily injury" to another "with the intent to maim, disfigure, disable or

kill." "Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Alston v. Commonwealth*, 77 Va. App. 639, 648 (2023) (quoting *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012)). It "is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). Malice may be "either express or implied," and "[i]n determining whether malice may be implied from conduct, we look for actions reflecting 'a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice.'" *Flanders v. Commonwealth*, 298 Va. 345, 358 (2020) (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019)). "In addition, malice may be implied from use of a deadly weapon, and we have recognized that '[a] motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife.'" *Id.* (alteration in original) (citation omitted) (quoting *Essex v. Commonwealth*, 228 Va. 273, 281 (1984)). "The presence of malice 'is a question of fact to be determined by [the trier of fact].'" *Fletcher*, 72 Va. App. at 507 (alteration in original) (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)).

We hold the evidence was sufficient for the trial court to find that appellant acted with malice toward J.S. Throughout his interactions with J.S. on October 18, 2018, appellant repeatedly demonstrated ill will towards her. He was angry with and screamed at J.S., called her obscene names, threatened to kill her if she did not get in the car with him, punched her, prevented her escape from the car, and said he would drive them off a bridge and that if he could not "have [J.S.]," no one else could. Appellant then stated his deliberate intent to purposefully commit a wrongful act by "crash[ing] this bitch"—i.e., the car—and did crash the car by driving at speed off an unobstructed roadway and into a tree. The record is devoid of any just cause,

excuse, or provocation for this wrongful act that both effectuated appellant's clearly expressed malice toward J.S. and demonstrated his intent to kill, maim, disable, or disfigure her. And in addition to the evidence of appellant's express malice, the trial court was free to find malice implicit in appellant's wrongful use of the car in a willful and wanton manner indifferent to the value of J.S.'s life. Accordingly, the trial court did not err in finding sufficient evidence of malice to convict appellant for aggravated malicious wounding of J.S.

Although appellant advances a hypothesis that the crash resulted from an "accidental loss of control," rather than a deliberate, malicious act, the record does not support this. While appellant was "clearly emotional" and driving "at a high rate of speed" when the crash occurred, neither the evidence nor fair inferences drawn in favor of the Commonwealth accord with his contention that he was "not concentrating on his driving or on the roads." Rather, the record supports the trial court's factual finding that there was "no indication that [the crash] was by accident" or anything other than an "intentional" occurrence. And appellant's own statements after the crash support the trial court's finding that appellant acted deliberately, rather than falling victim to an "accidental loss of control"; appellant repeatedly told J.S. not to "tell [the deputies] anything" because "[t]hey will send me back to prison" and asked her to "please don't do this." The trial court was free to reject as unreasonable appellant's hypothesis that the crash was a mere accident, and we find no error in that rejection. *See Moseley*, 293 Va. at 464 ("[T]he factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant."); *Sample v. Commonwealth*, 303 Va. 2, 17 (2024) ("[T]he question is not whether there is some evidence to support the accused's hypotheses of innocence, but rather 'whether a reasonable [factfinder], upon consideration of all the evidence, could have rejected [the accused's]

theories.'" (alterations in original) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003))).

B. Cross-examination of J.S.

Appellant notes that the Commonwealth "relied heavily" on J.S.'s testimony for the evidence the trial court found sufficient to convict him. He contends the trial court erred during cross-examination when it sustained the Commonwealth's objection to his question about J.S. "losing her nursing license through suspension" for "stealing." Appellant argues that he was "not allow[ed] . . . to pursue the matter" to "determine if this . . . might have included false statements to a tribunal, such as a Nursing Board" that would have been admissible "under the 'unadjudicated perjury' exception" provided by Virginia Rule of Evidence 2:608(d). Had he not been "denied" the opportunity for such impeachment, appellant contends, his further questioning of J.S. "could have had an effect on the trial court's reliance on and acceptance of her testimony."

"Appellate courts review evidentiary rulings under an abuse of discretion standard." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)). Under this deferential standard, "a 'trial judge's ruling will not be reversed simply because an appellate court disagrees[.]' [O]nly in those cases [in which] 'reasonable jurists could not differ' has an abuse of discretion [supporting a reversal] occurred." *Id.* (alterations in original) (quoting *Campos*, 67 Va. App. at 702).

We reject appellant's argument, because based on the record before us, the trial court denied appellant nothing. Upon the Commonwealth's objection to his line of inquiry about a nursing license suspension, counsel for appellant stated that he was "asking about a crime which [J.S.] has committed." Counsel for appellant was then permitted to ask about that putative crime of stealing another person's prescription, and J.S. denied ever having been charged with such a

crime.  Counsel for appellant made no representation to the trial court that he wished to ask J.S. about false statements to a nursing board or other tribunal, or about other matters of moral turpitude beyond "a crime," and did not object to any alleged curtailment of the cross-examination or proffer any further testimony.  Finding no error in the record as alleged by appellant, we likewise find no abuse of discretion by the trial court during cross-examination of J.S.

### III.  CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*