UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges O'Brien and Causey
Argued by videoconference


HEATHER RENEE JONES

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1687-23-3          CHIEF JUDGE MARLA GRAFF DECKER
                                                    OCTOBER 8, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

Aaron B. Houchens (Aaron B. Houchens, P.C., on briefs), for
appellant.

David A. Stock, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury found Heather Renee Jones guilty of aggravated involuntary manslaughter, driving

under the influence, maiming while driving under the influence, and maiming while driving

under the influence resulting in permanent impairment.  She challenges the trial court's

admission of certain evidence and the sufficiency of the evidence to support her convictions.

After reviewing the record and the relevant case law, we conclude that the trial court did not

abuse its discretion by admitting the challenged evidence.  Also, the evidence was sufficient to

prove that Jones was driving under the influence and acted with criminal negligence.

Consequently, we affirm the convictions.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Jones's convictions arise from a tragic car accident.  In May 2020, Jerry Broughman was driving with his two young daughters when Jones veered into his lane and crashed her car into his car.  Broughman died at the scene of the accident, and both daughters sustained serious injuries.

After the crash, Jones was transported to a hospital.  Sergeant Mark Banks with the Roanoke County Police Department followed the ambulance there.  At the hospital, Banks spoke with Jones and then arrested her for driving under the influence.[2]  The sergeant informed Jones of the implied consent law, and she agreed to a blood test.  Hospital personnel drew her blood, and testing showed that Jones had buprenorphine, fentanyl, and morphine in her system.[3]  Sergeant Banks later obtained a search warrant to access her hospital medical records.

Jones was charged with aggravated involuntary manslaughter, driving with a revoked license, driving under the influence, maiming while driving under the influence, and maiming while driving under the influence resulting in permanent and significant physical impairment.  *See* Code §§ 18.2-36.1(B), -51.4, -266.  She pleaded guilty to driving with a revoked license and not guilty to the other charges.

---

[1] We view the evidence in the light most favorable to the Commonwealth.  *Hicks v. Commonwealth*, 71 Va. App. 255, 261 n.2 (2019) (reviewing the admissibility of evidence); *Peters v. Commonwealth*, 66 Va. App. 743, 745 n.1 (2016) (reviewing the sufficiency of the evidence); *see Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (reviewing the denial of a motion to suppress).

[2] The audio recording of the interview was played for the jury and admitted into evidence.

[3] The amounts were less than .00050 mg/L of buprenorphine, between .003 and .010 mg/L of fentanyl, and between .003 and .011 mg/L of morphine.  Buprenorphine is "used to treat heroin addiction."

Jones sought to have her medical records suppressed, but the trial court ultimately admitted them.[4] She also asked the trial court to exclude the results of her blood draw, arguing that the sample was taken in violation of Code § 18.2-268.5, but the court denied that motion as well. At trial, Dr. Trista Wright, a supervisor at the Virginia Department of Forensic Science, testified as an expert in forensic toxicology. Wright spoke about the results of the blood analysis she conducted. She opined, over Jones's objections, about the effects that the levels of narcotics found in Jones's blood would have on a person's motor skills and driving ability.

After the presentation of the evidence, Jones made a motion to strike. She argued that the Commonwealth failed to prove that she was under the influence of the narcotics in her system or that she acted with criminal negligence. The trial court denied the motion.

The jury convicted Jones of the charged offenses. *See* Code §§ 18.2-36.1(B), -51.4, -266. She was sentenced to a total of thirty-five years and twenty-four months of incarceration, with twenty years suspended.

ANALYSIS

I. Admissibility of Evidence

On appeal, a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Jefferson v. Commonwealth*, 298 Va. 1, 10 (2019). The "bell-shaped curve of reasonability" underpinning appellate review for an abuse of discretion "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). "A reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Howard v. Commonwealth*, 74

---

[4] The trial court initially granted Jones's motion to suppress her medical records, finding that the first search warrant Sergeant Banks obtained lacked probable cause. Banks then obtained another search warrant based on new information.

Va. App. 739, 753 (2022).  To the extent this analysis requires interpretation of "statute[s] or the Rules of the Supreme Court, these are questions of law . . . review[ed] de novo." *Commonwealth v. Herring*, 288 Va. 59, 66 (2014) (quoting *Woodard v. Commonwealth*, 287 Va. 276, 280 (2014)).

Jones challenges the admissibility of three different categories of evidence.  First, she argues that the court erred by admitting the undisclosed opinions of Dr. Trista Wright.  Second, she contends that the blood draw results were inadmissible because her blood sample was taken in violation of Code § 18.2-268.5.  Third, she challenges the admission of her medical records.

## A.  Opinion Evidence

In the trial court, the judge issued a discovery order requiring the Commonwealth to provide a list of its expert witnesses at least ten days before trial, along with any written report or "a written summary of expert opinion testimony the Commonwealth intends to use at trial."  The order also noted that "[p]roviding a copy of a certificate of analysis" would "satisfy" the disclosure requirements.  The Commonwealth designated Dr. Wright as a toxicology expert.  The disclosure specified that she prepared the certificate of analysis of Jones's blood, but it did not identify details of her expected testimony.  A copy of the certificate of analysis was included with the disclosure.

At trial, Dr. Wright first testified about the results of the blood analysis.  She also described the effects the drugs detected in Jones's blood can have on a person.  Wright explained that, generally, taking morphine and fentanyl causes "dizziness, drowsiness, slurred speech, poor coordination, slowed reaction times, [and] difficulty performing divided attention tasks, . . . includ[ing] driving."  She further noted that the particular fentanyl level found in Jones's blood might cause "central nervous system depression."  Dr. Wright clarified that the fentanyl concentration in Jones's blood was "fairly elevated" and could even be "lethal" for an

inexperienced user. She explained that the effect "depends on the individual" because "individuals [who] are considered tolerant users" due to prior drug use "may not have as many observable effects." She testified that, even so, a user who had developed a tolerance would exhibit a "slowed" "reaction time." Wright also explained that buprenorphine, fentanyl, and morphine combined would have a greater depressant effect on a user's central nervous system "than any of these drugs by [themselves]."

Jones objected to Wright's testimony about the "generic effects" of fentanyl at the level found because it went beyond the scope of her expert witness designation. The trial court noted that under Rule 3A:11(b)(4)(B), providing a copy of the certificate of analysis satisfied the Commonwealth's disclosure obligation. It concluded that the authority relied on by Jones applied only to civil cases, not criminal ones, and overruled the objection.

On appeal, Jones again argues that the testimony was inadmissible because it exceeded the scope of the Commonwealth's disclosure during discovery. She points to Rule 3A:11, which applies to discovery in criminal cases.[5] Rule 3A:11(b)(4)(A) provides that a court may order the Commonwealth to disclose its "intent to introduce expert opinion testimony at trial or sentencing." In addition, the court can order the disclosure of "any written report of the expert witness setting forth the witness's opinions and the bases and reasons for those opinions, or if there is no such report, a written summary of the expected expert testimony setting forth the witness's opinions and the bases and reasons for those opinions." Rule 3A:11(b)(4)(A). The

---

[5] In a civil case, a party can require the other party to identify expected expert witnesses and "to state the substance of the . . . opinions to which the expert is expected to testify." Rule 4:1(b)(4)(A)(i); *see* Rule 4:0(a) (noting that the rules in part four apply to civil cases). We recognize that in a civil case, exclusion is ordinarily the appropriate remedy for an expert opinion that is not properly disclosed. *See Emerald Point, LLC v. Hawkins*, 294 Va. 544, 555 (2017); *Mikhaylov v. Sales*, 291 Va. 349, 360-61 (2016). We decline the appellant's invitation to apply civil authority in a criminal case because the two types of cases are expressly treated differently by the Rules of the Supreme Court. *See* Rules pt.1 app., form 3 § III.

rule also states that "[p]roviding a copy of a certificate of analysis from the Virginia Department of Forensic Science . . . signed by . . . the person performing the analysis or examination[] satisfies" the requirements of this subpart. Rule 3A:11(b)(4)(B).

Based on a plain reading of the rule, the Commonwealth satisfied the requirements by disclosing the certificate of analysis prepared by Dr. Wright. Jones disagrees with this interpretation, arguing instead that the submission of a certificate of analysis allowed for testimony limited to "chemical tests and forensic examinations." However, just as an appellate court may not add words when interpreting a statute, it cannot add words when interpreting the Rules of the Supreme Court. *See, e.g.*, *Kenner v. Commonwealth*, 299 Va. 414, 430 (2021) (applying the plain language of Rule 3A:17); *Herring*, 288 Va. at 69 (applying the plain language of Rule 5A:12(c)(1)(ii)); *Henthorne v. Commonwealth*, 76 Va. App. 60, 67 (2022) (recognizing the principle of statutory construction that a court may not add language to a statute). Based on the clear language of Rule 3A:11, the Commonwealth complied with the criminal discovery rules and the court order in this case by identifying Wright and providing the certificate of analysis.[6]

Consequently, the trial court did not abuse its discretion by allowing testimony from Dr. Wright about general effects of the drugs found in Jones's blood sample based on the levels detected and documented in the certificate of analysis.

---

[6] We note that an "[a]dmission of relevant and material evidence at trial [that] was not previously disclosed as required by a discovery order . . . is not reversible error absent a showing of prejudice." *Conway v. Commonwealth*, 12 Va. App. 711, 716 (1991) (en banc). "To show prejudice, the defendant must demonstrate how timely disclosure would have changed his trial strategy or affected the outcome of the trial." *Smoot v. Commonwealth*, 37 Va. App. 495, 502 (2002). Here, defense counsel conferred with Dr. Wright before trial and had the opportunity to cross-examine her. *See Davis v. Commonwealth*, 230 Va. 201, 204 (1985) ("When a discovery violation does not prejudice the substantial rights of a defendant, a trial court does not err in admitting undisclosed evidence.").

B. Blood Draw Results

There was some ambiguous evidence before the trial court as to who actually drew Jones's blood. The certificate of blood withdrawal reflects that the blood was taken by "Kim Manns / Justin Strowbridge." Kim Manns was a registered nurse, and Justin Strowbridge was an "emergency room technician or paramedic" at the hospital. During the blood draw, they were both in the room with Jones, along with Sergeant Mark Banks.

Manns testified that she did not specifically remember conducting a blood draw on Jones. She generally remembered drawing blood from someone and having Strowbridge assist with an ultrasound machine to locate a vein. Manns, however, did not remember if the subject of the blood draw was Jones. Strowbridge remembered being "called to the room" to use the ultrasound machine to look for a vein in Jones's arm. But he testified that he did not insert the needle to draw Jones's blood, nor did he remember if Manns was the person who did so. Sergeant Banks testified that Manns attempted the blood draw three times before Strowbridge brought an ultrasound machine into the room. Banks specifically recalled that Strowbridge inserted the needle and drew Jones's blood. The sergeant filled out the cards identifying the time, date, jurisdiction, his name, and his badge number, and said Manns attached those cards to the blood vials.

Jones made a motion to exclude the results of the blood draw. She argued that the evidence suggested that Strowbridge drew her blood and he was unqualified to do so under the language of the statute. The trial court held that regardless of whether Manns or Strowbridge drew the blood, it was done in compliance with or, at the very least, in substantial compliance with the statute. It therefore denied the motion to exclude the results of the blood draw.

Code § 18.2-268.5 provides that "[f]or purposes of this article, only a physician, registered nurse, licensed practical nurse, phlebotomist, graduate laboratory technician or a

- 7 -

technician or nurse designated by order of a circuit court acting upon the recommendation of a licensed physician . . . shall withdraw blood for the purpose of determining its . . . alcohol and drug content." Here, the record demonstrates that Manns and Strowbridge worked together to conduct the blood draw, although it was unclear as to which of the two individuals actually inserted the needle and drew the blood. Manns was a registered nurse, specifically authorized by Code § 18.2-268.5 to take a blood sample. Strowbridge, on the other hand, was an emergency room technician or paramedic, job titles not specifically referenced in the statute.

Code § 18.2-268.5 relates to "procedural" steps and is "not substantive" in nature. *See* Code § 18.2-268.11. And, significantly, it states that "[s]ubstantial compliance" with the statute is "sufficient." *Id.* At the time of the blood draw, Strowbridge was trained on how to draw blood from an arm vein. Also, he had drawn blood more than 2,000 times and was enrolled in his third semester of the four required to obtain his license as a registered nurse.

Based on the evidence taken as a whole, the Commonwealth established that either Manns drew the blood in compliance with Code § 18.2-268.5 or Strowbridge drew the blood in substantial compliance with the statute.[7] For this reason, the trial court acted within its discretion by admitting the results of the blood draw.[8]

---

[7] Regarding Code § 18.2-268.2, it is worth noting that "[f]ailure to comply with any steps or portions thereof shall not of itself be grounds for finding the defendant not guilty, but shall go to the weight of the evidence." Code § 18.2-268.11. A "defendant may 'introduce evidence on [her] own behalf to show noncompliance with the aforesaid procedures or any part thereof, and that as a result [her] rights were prejudiced.'" *Cutright v. Commonwealth*, 43 Va. App. 593, 600 (2004) (quoting Code § 18.2-268.11). Therefore, the remedy for any noncompliance resulting from Strowbridge's withdrawal of the blood is not, as Jones suggests, exclusion of the blood draw results.

[8] Below, the trial court relied on the unpublished opinion in *Elliott v. Commonwealth*, No. 1549-09-2, slip op. at 8, 2010 Va. App. LEXIS 364, at *13 (Sept. 7, 2010), and held that Strowbridge met the definition of a phlebotomist under Code § 18.2-268.5. We do not reach this ruling in light of our holding. *See Commonwealth v. White*, 293 Va. 411, 419 (2017).

## C. Medical Records

Before trial, Sergeant Banks obtained Jones's medical records from the hospital through a magistrate-issued search warrant. Jones asked the trial court to suppress those records. Concluding that the affidavit supporting the search warrant did not establish probable cause, the court granted that motion and suppressed the evidence.

After the court granted the motion, Sergeant Banks completed a new affidavit, with new information, and obtained a second search warrant for Jones's medical records. Jones objected to the admission of the records based on hearsay and also made a second motion to suppress, but the court admitted the records. On appeal, Jones challenges these rulings.

### 1. Hearsay

Jones contends that the medical records were inadmissible hearsay. She posits that the records were not properly authenticated because "Manns testified that she could not vouch for the accuracy of the information contained in the hospital records relating to the blood draw." Jones believes that, based on Manns's testimony, the records were not trustworthy and could not be admitted as business records.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). Such evidence "is inadmissible unless it falls within one of the recognized exceptions" to the rule against hearsay. *Melick v. Commonwealth*, 69 Va. App. 122, 133 (2018) (quoting *McDowell v. Commonwealth*, 48 Va. App. 104, 109 (2006)).

"The burden of establishing a statement or document that is otherwise inadmissible hearsay falls within a recognized exception . . . is borne [by] the proponent of the statement or document," in this case the Commonwealth. *Id.* "The proponent must establish the elements of

the exception by a preponderance of the evidence." *Id.* at 133-34 (noting a deferential standard of review for predicate factual findings underlying an admissibility determination).

An exception to the rule against hearsay exists for certain records, typically characterized as business records. Va. R. Evid. 2:803(6). For a record to qualify for this exception, it must meet particular foundational requirements. *Id.* Pertinent to the issue here, the business record exception applies only if "neither the source of information nor the method or circumstances of the preparation indicate a lack of trustworthiness."[9] Va. R. Evid. 2:803(6)(E). *See generally* Va. R. Evid 2:901 (requiring that evidence, to be admissible, must "support a finding that the thing in question is what [the] proponent claims").

Manns, who entered notes in the document, testified about her responsibility to enter information in a patient's medical record. She explained that a registered nurse's legal duties include accurately and promptly recording all of the medical care provided to a patient. *See generally* 18 Va. Admin. Code 85-20-26(C) (requiring medical practitioners to "maintain timely, accurate, legible, and complete patient records"). Her testimony met the evidentiary threshold of trustworthiness required to admit records of regularly conducted activity. *See, e.g.*, *Melick*, 69 Va. App. at 143-44 (affirming admission of transaction records). The testimony from Manns that she could not ascertain the accuracy of the notes she took in Jones's medical file because she could not remember the events from two years earlier was a factor for the trial court to consider in weighing admissibility but did not render the records per se inadmissible.[10] Instead, the trial court acted within its discretion by determining that the threshold requirements that registered nurses accurately and promptly prepare complete medical records regarding the care of their

---

[9] The other foundational requirements are not at issue in this case. *See* Va. R. Evid. 2:803(6).

[10] Manns was one of several individuals who entered information into Jones's medical records.

patients was sufficient to establish the trustworthiness of the records. *See Church v. Commonwealth*, 71 Va. App. 107, 122 (2019) ("Once th[e] threshold for proving admissibility has been met, any [alleged] gaps in the evidence are relevant to the trier of fact's assessment of its weight . . . .").

Consequently, the trial court did not abuse its discretion by concluding that the circumstances surrounding the preparation of the medical records established that they were trustworthy and met the parameters for admissibility under the business records exception to the rule against hearsay.

### 2. Motion to Suppress

Jones suggests that when the trial court initially suppressed her medical records under the exclusionary rule, that ruling became the law of the case and the court could not revisit the issue of the admission of those records. She argues alternatively that the exclusionary rule barred the records because they were derivative evidence.

On appeal of a trial court's denial of a motion to suppress, the appellant bears the burden of showing that the ruling was reversible error. *Jones v. Commonwealth*, 277 Va. 171, 177-78 (2009). In evaluating the trial court's determination, the appellate court is "'bound by [its] findings of historical fact unless "plainly wrong,"' and we 'give due weight to the inferences drawn from those facts' by the trial judge." *Salahuddin v. Commonwealth*, 67 Va. App. 190, 202 (2017) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). "[W]e review de novo the trial court's application of defined legal standards to the particular facts of a case." *Ferguson v. Commonwealth*, 52 Va. App. 324, 334 (2008) (emphasis omitted); *see Durham v. Commonwealth*, ___ Va. ___, ___ (Aug. 1, 2024).

Jones argues that the trial court was bound by its ruling on the first motion to suppress because it was the law of the case. Under the law-of-the-case "doctrine, 'when a party fails to

- 11 -

challenge a decision rendered by a court at one stage of litigation, that party is deemed to have waived her right to challenge that decision during later stages of the "same litigation."'" *Stacey v. Commonwealth*, 73 Va. App. 85, 94 (2021) (quoting *Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008)). The doctrine also applies to a jury instruction when neither party objects to it. *See, e.g.*, *Smith v. Commonwealth*, 296 Va. 450, 461-62 (2018); *Spell v. Commonwealth*, 72 Va. App. 629, 635 (2020). Contrary to the appellant's suggestion, however, the doctrine does not affect a trial court's authority to reconsider a ruling. *See, e.g.*, *Commonwealth v. McBride*, 302 Va. 443, 451 (2023) (holding that a trial court can revisit a verbal ruling on a motion to strike barring double jeopardy restrictions); *Robbins v. Robbins*, 48 Va. App. 466, 474 (2006) ("[A] trial court . . . can, to put it plainly, 'change its mind while the matter is still pending.'" (quoting *Pinkard v. Pinkard*, 12 Va. App. 848, 853 (1991))).

Here, the trial court initially suppressed the medical records obtained through the first search warrant because the affidavit in support of that warrant did not state facts sufficient to establish probable cause. In that affidavit, Sergeant Banks provided simply that Jones was involved in a car accident that killed another driver. After the blood analysis was completed, Banks, with additional significant information, again sought a search warrant. The new affidavit he submitted in support provided the new information that the results of Jones's blood analysis showed measurable levels of certain controlled narcotics and that she was criminally charged. The magistrate issued the new search warrant under new facts. Based on the second warrant, the trial court found probable cause and allowed the medical records into evidence.

Jones posits that when the trial court "suppressed the medical records seized [under] the original search warrant," the "ruling became the law of the case" and the court could not revisit its earlier ruling. First, we note that the ruling before us—the trial court's denial of Jones's *second* motion to suppress evidence—stemmed from a new affidavit, a new search warrant, and

- 12 -

a new motion to suppress. But, even if we were to accept Jones's proposition that by denying the second motion to suppress, the court revisited an earlier ruling rather than considered a new issue, the law-of-the-case doctrine did not prevent it from reconsidering its decision. *See Daily Press, LLC v. Commonwealth*, 301 Va. 384, 404 n.12 (2022) (holding that the law-of-the-case doctrine does not limit a trial court's authority to reconsider its earlier rulings); *In re Brown*, 295 Va. 202, 224 (2018) ("The law-of-the-case doctrine has no binding effect on a trial court prior to an appeal." (quoting *Robbins*, 48 Va. App. at 474)).

Jones further contends that the exclusionary rule should apply because admitting the evidence "rendered meaningless" "the deterrent effect of the prior Fourth Amendment violation." Jones does not allege that Sergeant Banks acted in bad faith. Instead, she protests that "the Commonwealth was permitted to simply fix errors and circumvent the Fourth Amendment violations."

"Ordinarily, evidence obtained as the result of an unlawful search is subject to suppression under the exclusionary rule." *Commonwealth v. Jones*, 267 Va. 532, 535 (2004). The judicially created rule "prevents evidence obtained in violation of the [F]ourth [A]mendment from being used against an accused." *Redmond v. Commonwealth*, 57 Va. App. 254, 261 (2010) (quoting *Commonwealth v. Ealy*, 12 Va. App. 744, 750 (1991)). This rule, however, is an extreme remedy that courts do not apply lightly. The Supreme Court of the United States has made clear that the "exclusion [of evidence] 'has always been our last resort, not our first impulse.'" *Herring v. United States*, 555 U.S. 135, 140 (2009) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). Accordingly, "[t]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." *Id.* at 141 (second alteration in original) (quoting *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364-65 (1998)).

By extension, "the exclusionary rule also prohibits the introduction of derivative evidence . . . that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search." *Murray v. United States*, 487 U.S. 533, 536-37 (1988). Evidence is not derivative if it is discovered due to an independent source and if the challenged evidence inevitably would have been discovered regardless of the unlawful action. *Ealy*, 12 Va. App. at 754. Similarly, the exclusionary rule does not apply if the connection between the challenged evidence and the unlawful search is "attenuated [so] as to dissipate the taint." *Id.* (quoting *Murray*, 487 U.S. at 537) (noting that the derivative evidence principle is the foundation of the fruit-of-the-poisonous tree doctrine). The question underpinning this analysis "is whether the challenged evidence was" obtained "'by exploitation of [the initial] illegality or instead by means *sufficiently distinguishable* to be purged of the primary taint.'" *Segura v. United States*, 468 U.S. 796, 804-05 (1984) (alteration in original) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). "The independent source doctrine works to put the Commonwealth in the same position it would have been in if there was no police error or misconduct." *Carlson v. Commonwealth*, 69 Va. App. 749, 760 (2019).

Here, the medical records were obtained through the second search warrant based on an independent source—the results of Jones's blood analysis. That analysis was not conducted because of any exploitation of an initial illegality. Jones does not dispute that Sergeant Banks provided sufficient facts in the second affidavit to support a finding of probable cause based on the results of the blood analysis. The execution of the second warrant left the Commonwealth in the same position that "it would have been" in if Sergeant Banks had not initially submitted a deficient warrant. *See id.* The initial unlawful request for access to the medical records did not contribute to Banks obtaining them later through the second independent search warrant.

For these reasons, the medical records, obtained legally through the second warrant, were not derivative evidence subject to the exclusionary rule. As a result, the trial court did not err by denying the second motion to suppress and allowing the medical records into evidence.

### III. Sufficiency of the Evidence

Jones challenges proof that she drove under the influence of narcotics and that her actions rose to the level of criminal negligence.

In reviewing the sufficiency of the evidence to support a conviction, this Court will affirm the decision unless the trial court was plainly wrong or the conviction lacked evidence to support it. *See Commonwealth v. Garrick*, 303 Va. 176, 182 (2024); *Hogle v. Commonwealth*, 75 Va. App. 743, 752-53 (2022). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Hogle*, 75 Va. App. at 753 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). When conducting this review, the "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Barney*, 302 Va. at 97 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). In the end, "[t]he only 'relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Garrick*, 303 Va. at 182 (alterations in original) (quoting *Barney*, 302 Va. at 97).

Some other fundamental principles apply in a sufficiency review. It is the function of the trier of fact to determine the credibility of witnesses and the weight afforded the testimony of those witnesses. *See Henderson v. Commonwealth*, 77 Va. App. 250, 270 (2023), *aff'd*, 303 Va. 212 (2024). Further, we "do[] not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its

- 15 -

determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

Jones appeals her convictions for driving under the influence, aggravated manslaughter, and maiming of another as a result of driving while intoxicated. *See* Code §§ 18.2-36.1(B), -51.4, -266. In Jones's case these offenses required proof that the accident occurred while Jones was under the influence of narcotics. In addition, the convictions for aggravated manslaughter and maiming as a result of driving while intoxicated required proof that her conduct was "so gross, wanton, and culpable as to show a reckless disregard for human life." *See* Code §§ 18.2-36.1(B), -51.4(A)-(B). This level of conduct constitutes criminal negligence. *See Wyatt v. Commonwealth*, 47 Va. App. 411, 416 (2006). Jones argues that the evidence did not prove she drove under the influence of narcotics nor that she acted with criminal negligence. We address these evidentiary challenges in turn.

A. Under the Influence

Jones suggests the Commonwealth did not exclude the reasonable hypothesis of innocence that she was not under the influence of narcotics since there was no direct evidence that she was substantially impaired at the time of the crash.

"The only requirement" in a circumstantial case is that the Commonwealth "put on enough circumstantial evidence such that a reasonable [fact finder] could have rejected [the] defendant's [hypothesis] of innocence." *Davis v. Commonwealth*, 65 Va. App. 485, 502 (2015). The reasonable-hypothesis principle "is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Moseley*, 293 Va. at 464 (quoting *Hudson*, 265 Va. at 513). "[M]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with [her] innocence has not been excluded." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017)

(second alteration in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). And "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact," which "is binding on [the appellate court] unless plainly wrong." *Maust v. Commonwealth*, 77 Va. App. 687, 700 (2023) (en banc) (first alteration in original) (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010)).

Simply stated, the fact finder "determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Moseley*, 293 Va. at 464. "[T]he question," therefore, "is not whether 'some evidence' support[ed] the hypothesis, but whether a rational factfinder could have found the incriminating evidence render[ed] the hypothesis of innocence unreasonable." *James v. Commonwealth*, 53 Va. App. 671, 682 (2009) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)).

Turning to the element of whether a driver was under the influence in violation of Code § 18.2-266, "[t]he thrust of the statutory scheme is to prohibit . . . driving where the driver's ability" to safely operate a vehicle is "impaired" due to consumption of alcohol, narcotics, or other intoxicants. *See Hogle*, 75 Va. App. at 753 (quoting *Thurston v. City of Lynchburg*, 15 Va. App. 475, 483 (1992)). One method by which the Commonwealth can prove this element is by establishing that the person's ingestion of narcotics was "enough . . . to 'so affect [her] manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation.'" *See id.* at 753-54 (quoting *Thurston*, 15 Va. App. at 483). "In determining whether a defendant was under the influence, a factfinder considers 'all of the evidence of [her] condition at the time of the alleged offense.'" *Id.* at 754 (quoting *Leake v. Commonwealth*, 27 Va. App. 101, 109 (1998)).

The blood analysis revealed that Jones had ingested buprenorphine, fentanyl, and morphine. Dr. Wright testified that the three substances taken together would have a cumulative depressant effect on a person's central nervous system. She also explained that typically someone who had taken morphine or fentanyl would exhibit "dizziness, drowsiness, slurred speech, poor coordination, slowed reaction times, [and] difficulty performing divided attention tasks," including driving. Dr. Wright stated that the level of fentanyl found in Jones's blood could even be lethal. She opined that how the substances affect a person depends on the individual. Notably, Dr. Wright explained that a "tolerant user[]" may not exhibit as many observable effects but still would have a slowed reaction time. When Sergeant Banks spoke with Jones at the hospital, he noted "[s]he appeared drowsy with droopy eyelids" and had constricted pupils. Banks described Jones's demeanor as "depressed," "mellow," and "not very awake." The jury was able to hear the tone of Jones's voice in the audio recording of their conversation. It was entitled to conclude from all the evidence that the narcotics impaired Jones's ability to safely operate a vehicle and therefore that she was under the influence of narcotics at the time of the crash.

Jones points to evidence to the contrary. Witnesses at the scene of the accident did not notice that Jones had any balance, coordination, or speech issues right after the accident. When Sergeant Banks encountered Jones at the hospital, she performed adequately on the field sobriety tests. Nevertheless, the jury considered this testimony along with the other evidence and concluded that her driving ability was impaired when the collision occurred. Evidence in the record supported this finding. *See Garrick*, 303 Va. at 187 ("The appellate standard of review precludes an appellate court from drawing inferences that were rejected by the factfinder . . . .").

On this record, the evidence was sufficient to support the jury's finding that Jones was driving under the influence when she crashed her vehicle into Broughman's.

- 18 -

B. Criminal Negligence

Jones also contends that the Commonwealth did not establish that she was criminally negligent because the evidence did not prove that she was substantially impaired.

To establish the offenses of aggravated manslaughter and maiming as a result of driving while intoxicated, the Commonwealth was required to demonstrate criminal negligence by proving that Jones's conduct was "so gross, wanton, and culpable as to show a reckless disregard for human life." *See* Code §§ 18.2-36.1(B), -51.4(A)-(B). "[W]hether a defendant's conduct is criminally negligent is usually a question for the trier of fact, unless reasonable minds could not differ." *Coomer v. Commonwealth*, 67 Va. App. 537, 546 (2017) (quoting *Carosi v. Commonwealth*, 280 Va. 545, 556 (2010)).

The criminal negligence element requires proof of "a causal connection between the driver's" ingestion of drugs and the accident. *See Wyatt*, 47 Va. App. at 417 (considering the element in the context of Code § 18.2-36.1(B)). "The mere happening of an accident, coupled with evidence that the offender had been drinking" or ingesting narcotics "and that the accident was [her] fault, does not prove *criminal* negligence as a matter of law." *See id.* at 418; *see also Zirkle v. Commonwealth*, 189 Va. 862, 868 (1949) ("[T]he negligence required to be proven in a criminal proceeding must be more than the lack of ordinary care and caution."); *Coomer*, 67 Va. App. at 547, 551 (rejecting "the proposition that voluntary intoxication standing alone is sufficient to constitute criminal negligence for the purpose of felony child neglect"). Even so, evidence of impairment is "relevant to a determination of the degree of the defendant's negligence." *See Wyatt*, 47 Va. App. at 418 (quoting *Essex v. Commonwealth*, 228 Va. 273, 283 (1984)).

When a driver is impaired from alcohol or drugs, "dangerous conduct" "tends" to be "more dangerous." *See id.* (quoting *Essex*, 228 Va. at 283). This is so because a driver who is

intoxicated or under the influence "has dulled [her] perceptions, blunted [her] skill, and slowed [her] reflexes in advance." *Id.* (quoting *Essex*, 228 Va. at 283). "The same reckless driving is more dangerous . . . than it would be if [she] were sober, and [her] conduct is therefore more culpable." *Id.* (quoting *Essex*, 228 Va. at 283).

Jones decided to drive despite having ingested three substances that, combined, had a cumulative depressant effect on her central nervous system. Both morphine and fentanyl slow reaction times and impair a person's driving ability. The level of fentanyl found in Jones's blood was even potentially lethal. Later, when Sergeant Banks spoke with Jones at the hospital, she appeared "drowsy with droopy eyelids," and her pupils were constricted. Dr. Wright testified that tolerant users may not exhibit observable effects but still would have slow reaction times.

In conducting our analysis on appeal, "[t]he only 'relevant question'" for the Court to consider "'is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Garrick*, 303 Va. at 182 (alterations in original) (quoting *Barney*, 302 Va. at 97). As an "appellate court," we "may neither find facts nor draw inferences that favor the losing party that the factfinder did not." *See id.* The evidence here supports a finding of a causal connection between Jones's impairment from her drug use and driving her car into oncoming traffic so as to prove criminal negligence. *Cf. Coomer*, 67 Va. App. at 550 (reversing conviction where "nothing . . . other than the consumption of alcohol . . . suggest[ed] any negligence on [the defendant's] part"). The testimony established that the drugs in her system slowed her reaction time and made driving more difficult. Jones chose to drive despite her impairment and then failed to maintain control of her vehicle. On a wet road and around a curve, she was driving 51 mph, above the suggested posted speed of 40 mph. Jones veered her car

almost entirely into the lane of oncoming traffic, causing the impact.[11]  "This evidence supports a finding that, at the very least," Jones "should have known [her] behavior was reasonably calculated to produce injury."  *See Wyatt*, 47 Va. App. at 421.

This record, viewed in the light most favorable to the Commonwealth, supports the jury's finding that Jones acted with gross, wanton, and culpable conduct demonstrating a reckless disregard for human life.

CONCLUSION

The trial court acted within its discretion by allowing the testimony of Dr. Wright about the generic effects of buprenorphine, morphine, and fentanyl.  The court did not err in admitting the blood draw results.  In addition, the trial court acted appropriately in admitting the medical records into evidence.  Finally, the evidence was sufficient to prove that Jones was driving under the influence and acted with criminal negligence.  For these reasons, we affirm the convictions.

*Affirmed.*

---

[11] Most of the front of Jones's vehicle was crushed, supporting the inference that the impact was almost entirely head on.